NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILES SENN, Individually and on Behalf of All Others Similarly Situated, | |
| Movant, | **Hon. Dennis M. Cavanaugh** |
| v. | **OPINION** |
| WILLIAM V. HICKEY, T.J. DERMOT DUNPHY, DANIEL VAN RIPER, DAVID KELSEY, JEFFREY S. WARREN and SEALED AIR CORPORATION, | Case No. 03-cv-4372 (DMC) |
| Respondent. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court on the motion of Miles Senn ("Movant") for an order: (a) appointing Movant as Lead Plaintiff; and (b) approving Movant's selection of Lead Counsel and Liaison Counsel for the Class pursuant to §§ 21(D) *et seq.* of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 23 of the Federal Rules of Civil Procedure. For the following reasons, Movant's motion is **granted**.

## **FACTUAL AND PROCEDURAL HISTORY**

The underlying action is a securities class action on behalf of public investors who purchased the securities of Sealed Air Corporation ("Sealed Air") during the period March 27, 2000, through July 30, 2002, (the "Class Period"). Movant alleges that Respondents, throughout the Class Period: (1) failed to follow Generally Accepted Accounting Principles ("GAAP") by acknowledging its potential contingent liability related to asbestos liability exposure; and (2) artificially inflated the price of its stock by disseminating materially misleading statements concerning the Company's earnings, business operations and prospects.

Respondent Sealed Air is a global manufacturer of protective and specialty packaging materials and systems, including polyurethane packaging systems, foams and air cellular cushioning materials. Sealed Air is a successor corporation of W.R. Grace & Co., Inc. ("Grace"), a company which until 1998 included a packaging business, Cryovac, and a specialty chemicals business. Among other things, Grace was involved in the manufacture of several products, including but not limited to attic insulation. Within the past twenty-five years, numerous lawsuits have been filed by individuals and survivors of individuals exposed to asbestos-contaminated products manufactured by Grace.

In 1998, Grace spun off its packaging business, Cryovac, which merged with Sealed Air. Grace also spun off its specialty chemicals business into a separate, publicly owned company. Movant alleges that, as part of these transactions, Grace agreed to indemnify Sealed Air against liabilities resulting from the involvement of Grace's chemicals business with asbestos-containing products.

Movant asserts that beginning in 2000, plaintiffs in several states filed personal injury and wrongful death lawsuits naming Sealed Air and Grace as co-defendants and seeking to overturn the merger of Grace's Cryovac packaging business with Sealed Air as a fraudulent transfer designed to shield the assets of Grace's former packaging business from asbestos liability. On April 2, 2001, Grace filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code.

Movant's allegations include claims that Respondents consistently failed to acknowledge Sealed Air's potentially massive contingent liabilities related to Grace's asbestos liability exposure and artificially inflated the price of Sealed Air stock by disseminating materially misleading statements concerning the Company's earnings, business operations and prospects. Further, Movant alleges that Respondents violated GAAP by failing to accrue for Sealed Air's contingent liabilities related to the acquisition of Cryovac "where an assessment has indicated that a loss is probable and can be reasonably estimated" as required by GAAP.

Finally, Movant contends that Respondents' misrepresentations and omissions concerning Sealed Air's contingent asbestos liability drove Sealed Air's stock price from a Class Period high of $58.68 to a low of $14.51 on July 31, 2002. In sum, Movant alleges a financial loss of $3,362.75 during the Class Period and proposes the appointment of Glancy & Binkow LLP as Lead Counsel, with Squitieri & Fearon, LLP as Liaison Counsel.

Movant Miles Senn commenced case number 2:03-cv-4372 on September 15, 2003. On September 29, 2003, counsel for Movant published a notice of pendency of Respondent's case in *Financial Times*, a nationally circulated business-oriented publication. Consequently, Movant

brings the instant motion pursuant to his complaint and notice of pendency.

## DISCUSSION

### A. Appointment of Lead Plaintiff

Under the PSLRA, courts "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). "The purpose behind the PSLRA is to 'empower investors so that they, not their lawyers, control private securities litigation' by allowing the Court to ensure the transfer of 'primary control of private securities litigation from lawyers to investors.'" In re: Party City Securities Litigation, 189 F.R.D. 91, (D.N.J. 1999), quoting Chill v. Green Tree Fin. Corp., 181 F.R.D. 398, 407 (D. Minn. 1998). The selection of the most adequate plaintiff under the PSLRA is governed by the rebuttable presumption that:

> The court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that...has (1) either filed the complaint, (2) in the determination of the court, has the largest financial interest in the relief sought by the class and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
> [15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).]

Movant has persuaded the Court that it is the presumptive lead plaintiff in this case. He has filed a motion to be appointed lead plaintiff, has the largest acknowledged financial interest of all those bringing actions, and has made a prima facie showing that it can satisfy the typicality and adequacy requirements of Rule 23. In re Cendant Corp. Litig., 264 F.3d 201, 263 (3d Cir.

4

2001), cert denied 525 U.S. 929 (2002) ("The initial inquiry...should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy.").

The Rule 23 typicality requirement requires that the injuries of the movant with the largest financial losses should not be markedly different from those of the other moving parties and that the movant's claims be based on the same legal issues as the claims of other class members. See In re Cendant, 264 F.3d at 265. Here, Movant alleges injuries and makes claims which are typical of other plaintiffs in the class. Like all other class members, Movant claims he was injured by purchasing or otherwise acquiring securities issued by Respondents during the Class Period at prices allegedly artificially inflated by Respondents' misrepresentations and omissions.

> In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.
> [Id., quoting Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988).]

With the largest acknowledged financial interest in the outcome of the litigation, Movant clearly has incentive to represent the claims of the class with vigor. Movant has also selected and retained competent and experienced counsel to represent itself and the class and there is no apparent conflict between its claims and the claims asserted on behalf of the class.

### B. Appointment of Lead Counsel

Under the PSLRA, "the most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Approval

of lead counsel necessarily requires an independent evaluation of, among other considerations, the effectiveness of proposed class counsel to ensure the protection of the class. In re Milestone Scientific Sec. Litig., 187 F.R.D. 165, 175 (D.N.J. 1999). "[T]he court should not interfere with lead plaintiff's choice of counsel, unless such intervention is necessary to 'protect the interest of the plaintiff class.'" Janovici v. DVI, Inc., 2003 U.S. Dist. LEXIS 22315 (D. Pa., 2003). As reflected in Movant's declaration, it is apparent that its choice of Lead Counsel, Glancey & Binkow LLP, possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. Furthermore, according to Movant's declaration, the law firm of Squitieri & Fearon, LLP, Movant's choice of Liaison Counsel, evidences competence in representing stockholders and consumers in complex matters. Since the Court finds the interests of Plaintiff's class adequately protected, there is no need to intervene in Movant's choice of Lead Counsel.

## CONCLUSION

For the reasons previously stated, Movant's motion appointing Miles Senn as Lead Plaintiff and approving its selection of Glancy & Binkow LLP as Lead Counsel and Squitieri & Fearon LLP as Liaison Counsel for the class is **granted**. An Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:       June 29, 2004
Original:   Clerk