NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

---

MILES SENN, Individually and on Behalf : 
of All Others Similarly Situated,  :                    **Hon. Dennis M. Cavanaugh**
                                   :
Plaintiff,  :                                          **OPINION**
                                   :
v.  :                                                  Civil Action No. 03-CV-4372 (DMC)
                                   :
WILLIAM V. HICKEY, T.J. DERMOT :
DUNPHY, DANIEL VAN RIPER,  :
DAVID KELSEY, JEFFREY S.
WARREN and SEALED AIR
CORPORATION,

Defendants.

---

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon a motion by William V. Hickey, T.J. Dermot Dunphy, Daniel Van Riper, David Kelsey, Jeffrey S. Warren ("Individual Defendants") and Sealed Air Corporation ("Sealed Air") (collectively "Defendants"), to dismiss all counts of the Complaint filed by Miles Senn  ("Plaintiff"), pursuant to 15 U.S.C. §§ 78u-4 et seq. and Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendants' motion to dismiss Plaintiff's Complaint is **granted** in part and **denied** in part.

## I. BACKGROUND

The underlying action is a securities class action that has been brought on behalf of public investors who purchased securities of Sealed Air Corporation during the period of March 27, 2000, through July 30, 2002.  (Class Action Complaint ("Cl. Compl.") at 1).  On June 6, 2004,

this Court issued an opinion naming Plaintiff Miles Senn as the lead Plaintiff in this matter.

Defendant Sealed Air Corporation is a global manufacturer of protective and speciality packaging materials and systems. (Defendants' Brief in Support of their Motion to Dismiss ("Def. Br.") at 1). Sealed Air is a successor corporation of W.R. Grace & Co., Inc. ("Grace"), a company with a packaging business, Cryovac, and a specialty chemical business. (Cl. Compl. at 1). In 1998, Sealed Air acquired Cryovac from Grace. (Id.) Prior to this transaction, Grace's chemical division, which was a separate entity from Cryovac, was involved in asbestos litigation. (Id.) During negotiations leading up to the purchase of Cryovac, both Grace and Sealed Air became concerned about Grace's asbestos litigation and whether purchasing Cryovac would expose Sealed Air to liability arising out of Grace's asbestos litigation. (Id.) If the transaction would result in Grace becoming insolvent, Sealed Air would become liable and the transaction would be subject to fraudulent transfer claims by Grace's creditors. (Plaintiff's Amended Complaint ("Pl. Compl.") ¶ 5).

In order to prevent a fraudulent transaction, Grace hired KPMG Peat Marwick LLP ("KPMG") to investigate and complete a report on Grace's solvency and future asbestos-related liabilities in March of 1997. (Id. at ¶ 72). Grace requested this report to determine whether it would remain solvent even after losing the Cryovac business. (Def. Br. at 6). In May of 1997, KPMG completed its report and informed Grace's Board of Directors that it would remain solvent after the Cryovac transaction. (Pl. Compl. at ¶ 72). Plaintiff's current claims focus on the KPMG report.

In August of 1997, Grace and Sealed Air publically announced their agreement to sell Grace's Cryovac packaging division to Sealed Air. (Def. Br. at 6). The agreement was designed to prevent Sealed Air from assuming any of Grace's asbestos liability. (Id.) Three years later on

April 2, 2001, Grace filed a petition for reorganization under Chapter 11of the Bankruptcy Code. (Pl. Compl. ¶ 103).  A committee of Grace's creditors filed an adversary proceeding in bankruptcy court against Sealed Air on March 18, 2002, claiming the Cryovac Transaction was fraudulent because it left Grace insolvent.  (Id. at ¶ 108).  Judge Wolin, the District Judge hearing the bankruptcy appeal, held that Grace's solvency should be determined based upon Grace's actual future liabilities on the day of the transfer and not based upon reasonable estimates of what the future liabilities were believed to be.  In re W.R. Grace & Co., 281 B.R. 852 (Bank. D.N.J. 2002).  The day after Judge Wolin made this determination, the price of Sealed Air's stock dropped by 41%.  (Def. Br. at 8).  Plaintiff claims he lost $3,362.75 on his investment in Sealed Air Stock as a result of Judge Wolin's July Order.  (Id.).

Plaintiff filed his Complaint on September 12, 2003, and an amended Complaint on December 1, 2004.  Plaintiff claims Defendants (1) failed to follow Generally Accepted Accounting Principles ("GAAP") by acknowledging their potential contingent liability related to asbestos liability exposure; and (2) artificially inflating the price of its stock by disseminating materially misleading statements concerning Grace's earnings, business operations and prospects.  (Id.)  In particular, Plaintiff alleges Defendants "rigged" the KPMG Report to understate Grace's asbestos liability.  (Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Br.") at 4).  Defendants in this case are as follows: Sealed Air; William V. Hickey, the Chief Operating Officer from 1971 until February 2000 and director of Sealed Air since 1999; T.J. Dermot Dunphy, Chief Executive Officer and Director of Sealed Air until March 2000; Daniel Van Riper, Senior Vice President and Chief Financial Officer of Sealed Air from July 1998 until January 2002; and David Kelsey; present Vice President and Chief Financial Officer of Sealed Air. (Pl. Compl. ¶ 26-31).  Defendants have filed a motion to dismiss all counts

of Plaintiff's Complaint.

## II. Applicable Law

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for failure to state a claim upon which relief can be granted.  When deciding a 12(b)(6) motion to dismiss, all allegations in the Complaint must be taken as true, and viewed in the light most favorable to the plaintiff.  See Worth v. Selden, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1988); Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984).  "We must determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief, and we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

When deciding a motion to dismiss for failure to state a claim, courts in the Third Circuit may review facts alleged in the Complaint, documents explicitly relied upon or incorporated by reference in the Complaint, and may examine other documents integral to the Complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with allegations," a court shall dismiss a complaint for failure to state a claim.  Hechuan v. King & Spalding, 467 U.S. 69, 73 (1984); Lynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982).

### B. Section 10(b) of the Securities Exchange Act of 1934

Section 10(b) of the Securities Exchange Act of 1934 ("Act") prohibits the use of

fraudulent schemes or devices in connection with the purchase or sale of securities.  15 U.S.C. §

78j(b).  Under Section 10(b) it is unlawful "[t]o use or employ, in connection with the purchase

or sale of any security...any manipulative or deceptive device or contrivance in contravention" of

any rule promulgated by the Securities Exchange Commission ("SEC") designed to protect the

investing public. Id..  To implement the statute, the SEC enacted Rule 10b-5, which if violated,

gives rise to a private cause of action.  Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976); Blue

Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975).  Rule 10b-5 makes it unlawful:

> (a) [t]o employ any device, scheme, or artifice to defraud,(b) [t]o make
> any untrue statement of a material fact or to omit to state a material
> fact necessary in order to make the statements made, in the light of the
> circumstances under which they were made, not misleading, or (c) to
> engage in any act, practice, or course of business which operates or
> would operate as fraud or deceit upon any person in connection with
> the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  Standing to bring a private cause of action under Section 10b-5 is limited

to actual purchasers or sellers of securities.  See Blue Chip, 421 U.S. at 749.

The first step for a Rule 10b-5 plaintiff is to show the defendant made a materially false

or misleading statement or omitted a material fact that resulted in a misleading statement.  In re

Phillips Petroleum Sec. Litig., 881 F.2d 1236, 1243 (3d Cir. 1989).  Second, a plaintiff must

show the defendant acted with scienter and that plaintiff's reliance on defendant's misstatement

caused his injury.  Id. at 1244.  Finally, a plaintiff asserting a fraud claim, must also satisfy the

heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure.  In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997).

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity."  While the Third Circuit noted

that this standard has been rigorously applied in Burglington, it also cautioned courts to be

"sensitive to the fact that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud."  114 F.3d at 1418, <u>citing</u> <u>Christidis v. First Pa. Mortgage Trust</u>, 717 F.2d 96, 99 (3d Cir. 1983).   Accordingly, the Rule 9(b) particularity requirement has been relaxed in situations where the factual information is within the defendant's knowledge or control.  <u>Shapiro v. UJB Fin. Corp.</u>, 964 F.2d 272, 285 (3d Cir. 1992).   Regardless of the relaxed standard, "boilerplate and conclusory allegations will not suffice."  <u>Id.</u>  Plaintiffs must provide factual allegations with their legal theory that make their theoretically viable claims plausible.  <u>Id.</u>

### C. The Private Securities Litigation Reform Act

In addition to the requirements of Rule 9(b), complaints alleging securities fraud must also meet the requirements of the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. §78u-4.  <u>See</u> <u>In re Party City Sec. Litig.</u>, 147 F.Supp.2d 282, 299 (D.N.J. 2001);  <u>Oran v. Stafford</u>, 34 F.Supp. 2d 906, 909 (D.N.J. 1999) <u>aff'd</u> 226 F.3d 275 (3d Cir. 2000) ([a] Rule 10b-5 plaintiff must satisfy the heightened pleading requirements set out in Rule 9(b) and the PSLRA.)  Under the PSLRA, complaints alleging Section 10(b) claims must set forth "each statement alleged to be misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Furthermore, in securities fraud claims where recovery of monetary damages is contingent on proof that the defendant acted with a particular state of mind, the PSLRA requires that the complaint also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); <u>Oran v. Stafford</u>, 226 F.3d 275, 288 (3d Cir. 2000).

The Third Circuit noted that in Rule 10b-5 actions, this requirement supersedes the provisions of Rule 9(b) to the extent that Rule 9(b) would otherwise permit a state of mind to be averred generally.  In re Advanta Corp. Sec. Litig., 180 F.3d 525, 531 (1995).  A plaintiff may establish this inference of scienter either by alleging facts that show defendants had both motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of defendant's conscious misbehavior or recklessness.  Burlington, 114 F.3d at 1418 (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995).  "In other words, pursuant to this 'modified' Rule 12(b)(6) analysis, 'catch-all' or 'blanket' assertions that do not comply with the particularity requirements are disregarded." Cal. Pub. Employees Ret. Sys. v. Chubb Corp., 394 F.3d 126, 144 (3d Cir. 2004).  A complaint that fails to comply with the requirements of the PSLRA must be dismissed.  15 U.S.C. §78u-4(b)(3)(A).

### III. Analysis

#### A. Plaintiff's Claims Against Certain Individual Defendants must be Dismissed

Plaintiff bases his Complaint largely on his allegation that individual Defendants knew the Cryovac Transaction was a fraudulent transfer.  Specifically, Plaintiff alleges individual Defendants artificially suppressed the number of then-asserted asbestos claims against Grace to KPMG during the time KPMG was preparing the report.  (Pl. Compl.¶ 6).  Plaintiff claims individual Defendants did this so it would appear to KPMG that Grace would remain solvent after the Cryovac transaction.  (Id.)  Plaintiff further alleges individual Defendants withheld information from KPMG so that it would not consider the gravity of asbestos personal liability and property damages liability resulting from Grace's asbestos mining operations in Libby, Montana.  (Id. at ¶ 7).  Plaintiff claims KPMG was "not told that the leveling off of [asbestos] claims was merely a reflection of the fact that these temporary moratoria" with asbestos

plaintiffs' law firms were in place.  (Id. at ¶ 16).

Plaintiff fails to meet the heightened pleading requirement of the PSLRA's Rule 9(b) because he does not state with particularity the fraudulent statements made by each Defendant and the reasons why these statements were misleading.  Although Plaintiff claims Defendants "rigged" KPMG's report, Plaintiff fails to show how the individual Defendants contributed to the alleged fraud.  Plaintiff admits Defendants Hickey and Warren, worked for Sealed Air, and not Grace, at the time Grace hired KPMG to prepare the report.  (Pl. Compl. ¶¶ 26-27, 30).  Plaintiff also admits Defendants Kelsey and Van Riper did not begin working for Sealed Air until after the Cryovac Transaction had occurred.  (Id. at ¶¶ 28-29).   The Cryovac transaction had not yet occurred when Sealed Air hired KPMG to prepare the report.  (Def. Br. at 14).  Thus, Grace and Sealed Air were completely separate entities at the time Grace hired KPMG and to complete the report.   Furthermore, Sealed Air did not just rely on KPMG's report and findings.  Instead, it hired its own expert, Professor Eric Stallard of Duke University, to analyze the report and inform the Board of Directors of his findings.  (Id. at ¶ 14).  Plaintiff fails to draw any viable connection between these Defendants and the alleged fraud.  He does not point out any actual fraudulent statements or explain how these Defendants could have participated in a fraudulent report completed by a company they had nothing to do with.  Plaintiff has failed to show which Defendants made the fraudulent statements.  Plaintiff's generalized accusations against Sealed Air do not meet the heightened pleading requirement of Rule 9(b) with regard to these Defendants and must therefore be dismissed.

Plaintiff could also satisfy Rule 9(b) by providing particularized facts that give rise to a strong inference individual Defendants acted with the required scienter to commit fraud. Plaintiff could do this by either supplying facts showing Defendants had both motive and

opportunity to commit fraud or by stating facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.  Burlington, 114 F.3d at 1418.  First, Plaintiff has not provided any information showing Defendants consciously acted inappropriately or recklessly. Sealed Air hired its own expert to examine KPMG's report and present his findings to the Board of Directors.  This seems more like cautious behavior, not recklessness.   Second, desire to complete a transaction is not enough to find scienter existed.  The Third Circuit has addressed this issue and noted, "[i]n every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a successful transaction.  GSC Partners CDO Fund v. Washington, 368 F.3d 228, 237 (3d Cir. 2004).  Such allegations alone cannot give rise to a 'strong inference' of fraudulent intent."  Id.

Simply because Defendants desired to complete this transaction with Grace does not allow this Court to infer they acted fraudulently to assure the transaction occurred.  Plaintiff's allegations concerning motivation deal with Grace and not Sealed Air.  Plaintiff complains Grace wanted to "eliminate the corrosive effect of the asbestos liabilities on the stock valuation" and insulate its packaging business from liability before the liability arising from its activities in Libby were made public.  (Pl. Compl. ¶¶ 120, 129-33).  Plaintiff also claims Grace committed fraud by concealing the moratoria from KPMG.  (Id. at ¶ 123).  These allegations have nothing to do with Sealed Air and everything to do with Grace and the asbestos liability it faced from its chemical business.  These allegations do not satisfy Plaintiff's burden because they do not prove anything about Defendants' motivation.

Plaintiff also tries to satisfy his burden by claiming Defendants were motivated to inflate Sealed Air's stock price because shares of pre-existing Sealed Air stock were used as consideration for the Cryovac transaction.  (Id. at ¶ 119).  While fraudulent activity to conceal

Grace's asbestos liability may have impacted the status of Grace's stock, Plaintiff has not shown how this information would have affected Sealed Air's stock.  Finally, Plaintiff has not adequately explained how the financial structure of the Cryovac Transaction supports a strong inference of Defendants' intent to defraud or how this financial structure has anything to do with Defendants having allegedly concealing the flaws of the KPMG.

For all of these reasons, Plaintiff's claims against Defendants Hickey, Van Riper, Kelsey and Warren are dismissed.

### B. Plaintiff's Claims Against Defendant Dunphy

Plaintiff alleges Defendant Dunphy's intent to defraud can be inferred due to the fact he sold Sealed Air stock during the proposed class period.  Specifically, Plaintiff claims that Dunphy's sale of 90,000 shares of Sealed Air stock between May 7, 2002, and May 9, 2002, which constituted 11.8% of his total holdings, is enough to meet the pleading requirements described above.  (Id. at ¶ 134).  According to the Third Circuit, courts "will not infer fraudulent intent from the mere fact that some officers sold stock," since a large number of corporate executives are compensated by stock and stock options and are likely to trade those securities in the normal course of events.  Burlington 114 F.3d at 1424.  Therefore, in order to support an inference of fraud, Plaintiff must show Defendant Dunphy made the trades at a time and in quantities that were suspicious enough to support the necessary strong inference of fraudulent intent.  Id.  Although Defendant Dunphy only sold 11.8% of his stock, he received approximately $4 million in return for this sale.  (Pl. Compl. at ¶134).  While this is not enough evidence for this Court to determine Dunphy had fraudulent intent, due to the amount of money Dunphy received in exchange for the sale, Plaintiff has satisfied the above pleading requirement and the claims against Dunphy will therefore not be dismissed.

### C. Claims Against Defendant Sealed Air

Plaintiff has satisfied the above pleading requirements regarding his claims against Sealed

Air.  Therefore, Plaintiff's claims against Sealed Air will not be dismissed.

## IV. <u>CONCLUSION</u>

For the reasons stated, it is the finding of this Court that Defendants' motion to dismiss is

**granted** in part and **denied** in part.  Plaintiff's claims against Defendants Hickey, Van Riper,

Kelsey and Warren are hereby dismissed.  An appropriate Order accompanies this Opinion.

<u>  S/ Dennis M. Cavanaugh  </u>
Dennis M. Cavanaugh, U.S.D.J.

Date:          December 14, 2005
Original:      Clerk's Office
Cc:            All Counsel of Record
               The Honorable Mark Falk, U.S.M.J.
               File