UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILES SENN, Individually And On Behalf of All Others Similarly Situated, | No.  03-cv-4372 (DMC) |
| Plaintiffs, | |
| v. | |
| WILLIAM V. HICKEY, T. J. DERMOT DUNPHY,  DANIEL VAN RIPER, DAVID KELSEY, JEFFREY S. WARREN and SEALED AIR CORPORATION, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF AMENDED MOTION FOR CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    CASE BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   THE THIRD CIRCUIT FAVORS CLASS CERTIFICATION OF
       SECURITIES SHAREHOLDER SUITS, AND LIBERALLY
       CONSTRUES RULE 23 CRITERIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.    CLASS CERTIFICATION IS DETERMINED UNDER RULE 23,
       TAKING THE COMPLAINT'S ALLEGATIONS AS TRUE  . . . . . . . . . . 7

V.     THE CRITERIA OF RULE 23(a) ARE SATISFIED IN THIS CASE  . . . . 8

       A.    Rule 23(a)(1) Numerosity is Satisfied: The Members of the Class are
             So Numerous that Joinder of Each Class Member is Impracticable  . 8

       B.    Rule 23(a)(2) Commonality is Satisfied since the Class's Claims All
             Stem from a Common Course of Conduct . . . . . . . . . . . . . . . . . . . . 11

       C.    Rule 23(a)(3) Typicality is Satisfied since the Plaintiff's Claims Arise
             from the Same Course of Conduct as the Claims of the Class  . . . . 14

       D.    Rule 23(a)(4) Adequacy is Satisfied, Since MPERS Will Pursue This
             Litigation Through Competent and Experienced Counsel . . . . . . . . 16

VI.    THE CRITERIA OF RULE 23(b)(3) ARE MET IN THIS CASE  . . . . . . 18

       A.    Predominance is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

       B.    Superiority is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.   MPERS IS WELL-QUALIFIED TO SERVE AS CLASS
       REPRESENTATIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VIII.  MPERS SHOULD BE PERMITTED TO SERVE AS CLASS
       REPRESENTATIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

A.    The Third Circuit and Other Courts of Appeals Mandate that
      Intervention Should be Permitted to Ensure the Participation of an
      Adequate Class Representative . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

B.    The Standards for Joinder Under Fed.R.Civ.P. 24(a), 24(b) and 21 are
      Met . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

IX.   THE NEW CLASS REPRESENTATIVE SHOULD ALSO BE
      SUBSTITUTED AS LEAD PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . 32

X.    MPERS' CHOICE OF CO-LEAD COUNSEL SHOULD BE
      APPROVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# TABLE OF AUTHORITIES

## CASES

Amchem Prods., Inc. v. Windsor,
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19

Ardrey v. Federal Kemper Ins. Co.,
    142 F.R.D. 105 (E.D.Pa.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Baby Neal for & by Kanter v. Casey,
    43 F.3d 48 (3d Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 15

Baffa v. Donaldson, Lufkin & Jenrette Securities,
    222 F.3d 52 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Barnes v. American Tobacco Co.,
    161 F.3d 127 (3d Cir. 1998),
    cert. denied, 526 U.S. 1114 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Birmingham Steel Corp. v. Tennessee Valley,
    353 F.3d 1331 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Bradburn Parent/Teacher Store, Inc. v. 3M,
    2004 WL 414047 (E.D. Pa. March 1, 2004) . . . . . . . . . . . . . . . . . . . . . . 17

Brosious v. Children's Place Retail Stores,
    189 F.R.D. 138 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Califano v. Yamasaki,
    442 U.S. 682 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cannon v. Cherry Hill Toyota, Inc.,
    184 F.R.D. 540 (D.N.J.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Chiang v. Veneman,
    385 F.3d 256 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18

Contawe v. Crescent Heights of America, Inc.,
    2005 WL 1400383 (E.D.Pa. June 14, 2005) . . . . . . . . . . . . . . . . . . . . . . 31

Coopersmith v. Lehman Broth., Inc.,
    344 F.Supp.2d 783 (D.Mass.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Cumberland Farms, Inc. v. Browning-Ferris Indus.,
    120 F.R.D. 642 (E.D. Pa.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

David v. Thornburgh,
    903 F.2d 212 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Diduck v. Kaszycki & Sons Contractors, Inc.,
    147 F.R.D. 60 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

East Tex. Motor Freight Sys. v. Rodriguez,
    431 U.S. 395 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Eisenberg v. Gagnon,
    766 F.2d 770 (3d Cir. 1985),
    cert. denied, 474 U.S. 946, 106 S.Ct. 342
    88 L.Ed.2d 290 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 9, 20

Fink v. National Savings & Trust Co.,
    772 F.2d 951 (D.C.Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Four Star Capital Corp. v. Nynex Corp.,
    183 F.R.D. 91 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Georgine v. Amchem Prods. Inc.,
    83 F.3d 610 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 16, 21

Greebel v. FTP Software, Inc.,
    939 F.Supp. 57 (D.Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Hassine v. Jeffes,
    846 F.2d 169 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hevesi v. Citigroup,
    366 F.3d 70 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32, 34

In re Able Laboratories Securities Litigation,
    425 F.Supp.2d 562 (D.N.J.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

iv

In re AremisSoft Corp. Securities Litigation,
    210 F.R.D. 109 (D.N.J. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

In re Avon Securities Litigation,
    1998 WL 834366 (S.D.N.Y. Nov. 30, 1998) . . . . . . . . . . . . . . . . . . . . . . 26

In re Bank One Sec. Litig.,
    2002 WL 989454 (N.D.Ill. May 14, 2002) . . . . . . . . . . . . . . . . . . . . . . . . 36

In re Cendant Corp. Litigation,
    264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 34, 37

In re Cendant Corp. Securities Litigation,
    109 F.Supp.2d 273 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

In re Cendant Corp. Securities Litigation,
    404 F.3d 173 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

In re Cigna Corp. Securities Litigation,
    2005 WL 3952802 (E.D.Pa. February 23, 2005) . . . . . . . . . . . . . . . . . . . 27

In re Community Bank of Northern Virginia,
    418 F.3d 277 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18, 21

In re Fleetboston Financial Corp. Securities Litigation,
    2005 WL 3579050 (D.N.J. December 28, 2005) . . . . . . . . . . . . . . . . . . . . 9

In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,
    174 F.R.D. 332 (D.N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Global Crossing, Ltd. Securities Litigation,
    313 F.Supp.2d 189 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

In re Honeywell International Inc. Securities Litigation,
    211 F.R.D. 255 (D.N.J. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 15, 21

In re Initial Public Offering Securities Litigation,
    214 F.R.D. 117 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

In re Insurance Mgmt. Solutions Group Inc. Sec. Litig.,
206 F.R.D. 514 (M.D.Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

In re Loewen Group Inc. Securities Litigation,
233 F.R.D. 154 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 20, 22

In re Lucent Technolgies Inc. Securities Litigation,
307 F.Supp.2d 633 (D.N.J. 2004) . . . . . . . . . . . . . . . . . . . 11, 12, 15, 20, 22

In re Lucent Technologies, Inc., Securities Litigation,
194 F.R.D. 137 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

In re Merck & Co., Inc. Securities Litig.,
432 F.3d 261 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

In re Merrill Lynch & Co., Inc. Research Reports
Securities Litigation,
2003 WL 21033152 (S.D.N.Y. May 02, 2003) . . . . . . . . . . . . . . . . . . . . . 36

In re Nasdaq Market-Makers Antitrust Litig.,
169 F.R.D. 493 (S.D.N.Y.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Oxford Health Plans, Inc. Sec. Litig.,
191 F.R.D. 369 (S.D.N.Y.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

In re Pharmaprint Inc. Sec. Litig.,
2001 WL 31056813 (D.N.J. Apr. 17, 2002) . . . . . . . . . . . . . . . . . . . . . . 8, 23

In re Prudential Ins. Co. America Sales Practice
Litigation Agent Actions,
148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . 7, 8, 11, 16, 18-20

In re Prudential Ins. Co. of America Sales Practices Litigation,
962 F.Supp. 450 (D.N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Ravisent Technologies, Inc. Securities Litigation,
2005 WL 906361 (E.D. Pa. April 18, 2005) . . . . . . . . . . . . . . 12, 17, 19, 21

In re Regal Communications Corp. Securities Litigation,
1995 WL 550454 (E.D.Pa. Sept. 14, 1995) . . . . . . . . . . . . . . . . . . . . . . . . 7

vi

In re Remeron End-Payor Antitrust Litigation,
       2005 WL 2230314 (D.N.J. September 13, 2005) . . . . . . . . . . . . . . . . . . . . . . 9

In re Rent-Way Securities Litigation,
       218 F.R.D. 101 (W.D.Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23

In re Safeguard Scientifics,
       216 F.R.D. 577 (E.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Tel-Save Sec. Litig.,
       2000 WL 1005087 (E.D.Pa. July 19, 2000) . . . . . . . . . . . . . . . 9, 14, 16, 22

In re Tyson Foods, Inc.,
       2003 WL 22316548 (D. Del. October 6, 2003) . . . . . . . . . . . . . . 13, 18, 22

In re Verisign, Inc.,
       2005 WL 88969 (N.D.Cal. Jan. 13, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 36

In re Vicuron Pharmaceuticals, Inc. Securities Litigation,
       233 F.R.D. 421 (E.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-20

In re Warfarin Sodium Antitrust Litigation,
       391 F.3d 516 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re WorldCom, Inc. Securities Litigation,
       294 F.Supp.2d 392 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32

In Resource America Securities Litigation,
       202 F.R.D. 177 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Johnston v. HBO Film Management, Inc.,
       265 F.3d 178 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kondratick v. Beneficial Consumer Discount Co.,
       2006 WL 305399 (E.D. Pa. February 8, 2006) . . . . . . . . . . . . . . . . . . . . . . 11

Lerch v. Citizens First Bancorp.,
       144 F.R.D. 247 (D.N.J.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Link v. Mercedes-Benz of North America, Inc.,
    788 F.2d 918 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Metro Services Inc. v. Wiggins,
    158 F.3d 162 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Meyer v. CUNA Mut. Group,
    2006 WL 197122 (W.D. Pa. Jan. 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mountain Top Condominium Ass'n v. Dave Stabbert,
    72 F.3d 361 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

Neuberger v. Shapiro,
    1998 WL 826980 (E.D.Pa. Nov. 25, 1998) . . . . . . . . . . . . . . . . . . . . . . . 8, 19

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    259 F.3d 154 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Phillips Petroleum Co. v. Shutts,
    472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ritti v. U-Haul International,
    2006 WL 1117878 (E.D.Pa. April 26, 2006) . . . . . . . . . . . . . . . . . . . . . . . 25

Stewart v. Abraham,
    275 F.3d 220 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Thomas v. SmithKline Beecham Corp.,
    201 F.R.D. 386 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. v. Alcan Aluminum, Inc.,
    25 F.3d 1174 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Varacallo v. Massachusetts Mut. Life Ins. Co.,
    226 F.R.D. 207 (D.N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wachtel v. Guardian Life Ins. Co.,
    223 F.R.D. 196 (D.N.J.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Wetzel v. Liberty Mut. Ins. Co.</u>,
    508 F.2d 239 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Yang v. Odom</u>,
    293 F.3d 97 (3d Cir. 2004),
    cert. den. 125 S.Ct. 2294 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

<u>Zinberg v. Washington Bancorp, Inc.</u>,
    138 F.R.D. 397 (D.N.J. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## <u>RULES AND STATUTES</u>

15 U.S.C. § 78u-4(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

28 U.S.C. § 1331(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

3 Newberg on Class Actions
    § 7:28 (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Federal Rules of Civil Procedure
    Rule 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31, 32

Federal Rules of Civil Procedure
    Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6-8, 11, 16, 25, 28

Federal Rules of Civil Procedure
    Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7-9, 17, 21

Federal Rules of Civil Procedure
    Rule 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 10

Federal Rules of Civil Procedure
    Rule 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14

Federal Rules of Civil Procedure
    Rule 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rules of Civil Procedure
    Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

Federal Rules of Civil Procedure
    Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rules of Civil Procedure
    Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 18, 21, 22

Federal Rules of Civil Procedure
    Rule 23(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Federal Rules of Civil Procedure
    Rule 24(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Federal Rules of Civil Procedure
    Rule 24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

Private Securities Litigation Reform Act of 1995
    ("PSLRA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 24-29, 33, 34, 36

Securities & Exchange Act of 1934 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Securities & Exchange Act of 1934
    § 27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Securities & Exchange Act of 1934
    §21D(a)(3)(B)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## OTHER AUTHORITIES

Manual for Complex Litigation
    (Third), Section 30.16 at 222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

S. Rep. No. 104-98 (1995)
    1995 U.S.C.C.A.N. 679 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## I.     INTRODUCTION

This amended motion is intended to supersede the motion filed by Plaintiff

Miles Senn on October 3, 2006.  In Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir.

1985), and consistently since that holding, the Third Circuit has found that securities

law cases are particularly amenable to class action treatment, and that, in view of the

efficiencies of a class action and the impracticability of each shareholder bringing

individual claims, all doubts should be resolved in favor of certifying a plaintiff class

of shareholders.  This case falls within that framework and is appropriate for class

action treatment.

As part of the class certification proceedings, Lead Plaintiff Miles Senn wishes

to withdraw, in the best interests of the Class, in favor of a large institutional investor,

the Municipal Police Employees' Retirement System of Louisiana ("MPERS").  See

concurrently filed Declaration of Miles Senn ("Senn Declaration").  MPERS has in-

house counsel and a larger stake in the case, with $1,204,771 of losses.  See

concurrently filed Declaration of R. Randall Roche ("Roche Declaration") at ¶6.

MPERS is thus well-motivated and extremely capable of overseeing this action in

accordance with Congress's desire, in enacting the PSLRA, to favor the participation

of institutional investors.  (Roche Declaration ¶¶6-12).  Also, Mr. Senn has a loss

causation problem which will hinder his ability to represent the Class.  See Senn

Declaration at ¶9.  MPERS wishes to retain current counsel and also to appoint co-

lead counsel, the experienced firm of Pomerantz Haudek Block Grossman & Gross LLP.

Both the Class and MPERS fulfill the criteria of Fed.R.Civ.P. 23 ("Rule 23") (a)(1)-(a)(4).  The standards applying to the class as a whole-- numerosity and commonality – as well as the standards applying specifically to the named plaintiff-- typicality and adequacy– are all satisfied.

- The Class is sufficiently numerous, totaling over 15,000 different named shareholders and many others holding through a brokerage's street name.  Sealed Air's listing as a New York Stock Exchange-traded company also reflects numerosity. The Class also displays commonality, since all claims arise from the same misrepresentations during the Class Period.

- MPERS' claims are typical of those of the Class, having arisen from the same misrepresentations.  Typicality is indisputable as to the reliance element of the claim, since reliance will be proven through fraud on the market and is not a matter for individual proof by the Class members.  The only required individualized proof – that of damages – is not a bar to class action treatment under Third Circuit case law.  MPERS is adequate, having appointed competent counsel which has already diligently pursued claims in this case.

The case also satisfies the superiority and predominance criteria of Rule 23(b)(3).  The existence of falsity and scienter are common issues which overwhelmingly predominate.  Class action treatment is far superior, since individual claims would be uneconomical to litigate, would cause much duplication and inefficiency, and would unnecessarily drain the resources of the federal courts.  This action is brought in the district where Sealed Air's headquarters is situated, which is

2

where much of the documentary evidence and witnesses will be found. So efficiency is served by litigation in this single venue.

Having satisfied the requirements of Rule 23(a) and Rule 23(b)(3), this case should be certified as a class action with MPERS as the class representative.

## II.    CASE BACKGROUND

This case stems from disclosure on July 30, 2002, of a court order which informed the market of the likelihood that Sealed Air would be held liable for a fraudulent transfer. The announcement resulted in a two-day 61% decline in the stock price of Sealed Air. Ultimately Sealed Air took a charge of approximately $850,000,000 to reflect the settlement of the fraudulent transfer claims. (Amended Complaint ¶¶194-201). Prior to the July 30, 2002 announcement, Sealed Air had repeatedly denied during the Class Period that it would be liable, thus artificially inflating Sealed Air's stock price.

The Class Period wherein Sealed Air falsely denied liability extends from March 27, 2000 through July 30, 2002. (Amended Complaint ¶1). But the genesis of this case was the 1998 transaction which later gave rise to that liability. The 1998 transaction was the second of two corporate spin-offs by which W.R. Grace attempted to insulate its segregable businesses from the Grace asbestos liabilities. After spinning off its medical care business in a 1996 transaction (Amended Complaint ¶¶45-46), in 1998 Grace spun off its speciality chemicals business. The newly spun-

off entity assumed the name "W.R. Grace."  Grace, which was left with a profitable
packaging business after the 1998 spinoff, simultaneously – as part of the spin-off
transaction – acquired the pre-existing Sealed Air Corp., and renamed itself "Sealed
Air Corp."  (Amended Complaint ¶¶50-59).  Thus the corporate defendant in this
action, which currently bears the name "Sealed Air Corp.," is the same entity which
prior to the 1998 transaction was known as W.R. Grace.

In a joint proxy statement issued in connection with the 1998 transaction,
Grace and Sealed Air acknowledged the potential fraudulent transfer issue, but
reassured investors that no fraudulent transfer occurred.  (Amended Complaint ¶63).
In order to block any fraudulent transfer claims by the asbestos claimants, which the
Company knew might result from spinning off the asbestos liabilities, W.R.
Grace/Sealed Air needed to establish the spun-off entity's solvency.  If it could be
shown that the spun-off W.R. Grace (known as "New Grace") was solvent after the
spin-off – *i.e.*, its assets exceeded its liabilities including asbestos liabilities,
fraudulent transfer liability could be avoided.

W.R. Grace/Sealed Air brought in experts associated with KPMG to paper the
transaction with a solvency analysis (which was not publicly disclosed) which
projected and thereby quantified for New Grace's balance sheet the expected future
Grace asbestos liabilities.  Once KPMG quantified the projected claims, W.R.
Grace/Sealed Air was able to pump into New Grace just enough assets to provide the

spin-off with balance sheet solvency. (Amended Complaint ¶¶124-128).

However, the KPMG report was rigged.  W.R. Grace/Sealed Air failed to disclose to KPMG that the Company had artificially suppressed asbestos claims at the time of the 1998 transaction by secretly reaching agreement on a claims moratorium with a number of law firms representing asbestos claimants.  (Amended Complaint ¶¶85-96).  Also, W.R. Grace/Sealed Air knew KPMG's conclusions were false because KPMG failed to take into account the asbestos liabilities stemming from contamination from mining operations at Libby, Montana, a situation which has resulted in indictments and pending criminal proceedings brought against Grace officials. (Amended Complaint ¶¶97-102).

In 2001, the spun-off New Grace filed for bankruptcy as it was overwhelmed by asbestos claims. (Amended Complaint ¶¶103-104).  Even prior to the bankruptcy, as New Grace's financial plight became more serious, asbestos claimants across the U.S. began suing Sealed Air as well as the spun-off New Grace.  (Amended Complaint ¶160).  In the New Grace Chapter 11 proceedings, Sealed Air was sued in an adversary proceeding by the asbestos claimants' creditors' committee.  The basis of the lawsuit was a claim that the 1998 transaction constituted a fraudulent transfer. (Amended Complaint ¶106).  During the Class Period, and after the adversary proceeding was instituted against Sealed Air, Sealed Air falsely denied it would be held liable for a fraudulent transfer stemming from the 1998 transaction.  (Amended

Complaint ¶¶ 142-193).

Defendants did not disclose that the basis for that denial of liability – the premise that New Grace was expected to be solvent following the 1998 transaction – was the rigged report from KPMG.  Both the artificial suppression of asbestos claims by means of the moratoria, and the exclusion of the Libby Montana asbestos liabilities, led to the distorted and false conclusions reached by KPMG, which in turn formed the basis for Sealed Air's false denials of fraudulent transfer liability during the Class Period.

## III.   THE THIRD CIRCUIT FAVORS CLASS CERTIFICATION OF SECURITIES SHAREHOLDER SUITS, AND LIBERALLY CONSTRUES RULE 23 CRITERIA

Class actions allow "plaintiffs to pool claims which would be uneconomical to litigate individually....[M]ost of the plaintiffs would have no realistic day in Court if a class action were not available." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985).[1]  The "interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir. 1985), cert. den. 474 U.S. 946 (1985).

---

[1]"[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [plaintiff] to be litigated in an economical fashion under Rule 23." Califano v. Yamasaki, 442 U.S. 682, 701 (1979).

The foregoing principles are especially applicable to securities lawsuits.  The Third Circuit acknowledges that "'[c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'" Yang v. Odom, 392 F.3d 97, 109 (3d Cir. 2004), cert. denied, 125 S.Ct. 2294 (2005), quoting Eisenberg v. Gagnon, 766 F.2d at 775.  "The Court of Appeals for the Third Circuit has adopted a liberal construction of Rule 23 when considering shareholder suits."  In re Regal Communications Corp. Securities Litigation, 1995 WL 550454, at *3 (E.D. Pa. Sept. 14, 1995).

## IV.   CLASS CERTIFICATION IS DETERMINED UNDER RULE 23, TAKING THE COMPLAINT'S ALLEGATIONS AS TRUE

"In order to be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If the Rule 23(a) criteria are satisfied, the court must also find that the class fits within one of the three categories of class actions defined in Rule 23(b)." In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 308-309 (3d Cir. 1998).  The allegations of the complaint are taken as true for purposes of ruling on class certification, without ruling on the merits of the case.[2]

_____

[2]"In determining whether a class will be certified, the substantive allegations of the complaint must be taken as true." Chiang v. Veneman, 385 F.3d 256, 264 (2d Cir. 2004).  Thus, "it is not necessary for plaintiff to establish the merits of his case at the certification stage." Meyer v. CUNA Mut. Group, 2006 WL 197122, at *10

While accepting the complaint's allegations as true, "the court may in some cases 'analyze the elements of the parties' substantive claim and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." Yang v. Odom, 392 F.3d 97, 109 (3d Cir. 2004), quoting In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 339 (D.N.J. 1997).

## V.   THE CRITERIA OF RULE 23(a) ARE SATISFIED IN THIS CASE

### A.   Rule 23(a)(1) Numerosity is Satisfied: The Members of the Class are So Numerous that Joinder of Each Class Member is Impracticable

Pursuant to Rule 23(a)(1), "[t]he court must find that the class is 'so numerous that joinder of all members is impracticable.'" In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 282, 309 (3d Cir. 1998), cert. denied, 525 U.S. 1114 (1999) (quoting Fed.R.Civ.P. 23(a)(1)). "Impractical" does not mean "impossible."[3]

---

(W.D. Pa. Jan. 25, 2006). Any arguments advanced by defendants concerning the merits of the case "are not within the purview of a motion for class certification." Neuberger v. Shapiro, 1998 WL 826980, at *1-*2 (E.D. Pa. Nov. 25, 1998). See also, In re Pharmaprint Inc. Sec. Litig., 2001 WL 31056813, at *1 (D.N.J. Apr. 17, 2002) holding that "[i]n ruling on a motion for class certification, the Court does not consider the merits of the case, and takes as true the substantive allegations within the Lead Plaintiffs' amended complaint." Brosious v. Children's Place Retail Stores, 189 F.R.D. 138, 145 (D.N.J. 1999), similarly holds that "[a] motion for class certification should not turn on the court's evaluation of the merits of the parties' legal or factual claims."

[3]"This requirement does not demand that joinder be impossible, only extremely difficult or inconvenient." In re Rent-Way Securities Litigation, 218 F.R.D. 101, 112 (W.D. Pa. 2003). "The plaintiff need not precisely enumerate the potential size of the proposed class, nor is the plaintiff required to demonstrate that joinder would be impossible." Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1999);

Courts in this circuit hold that a class of hundreds of investors, or even tens of investors, is sufficiently numerous to merit class treatment.[4]  "Moreover, '[i]t is proper for the court to accept common sense assumptions in order to support a finding of numerosity.'" In re Remeron End-Payor Antitrust Litigation, 2005 WL 2230314, at *8 (D.N.J. September 13, 2005), quoting Cumberland Farms, Inc. v. Browning-Ferris Indus., 120 F.R.D. 642, 646 (E.D. Pa.1988)[5].  Thus, classes comprised of shareholders of large, publicly-held companies have been held to display numerosity."[6]

---

accord Wachtel v. Guardian Life Ins. Co., 223 F.R.D. 196, 211 (D.N.J. 2004), In re Remeron End-Payor Antitrust Litig. 2005 WL 2230314, at *8 (D.N.J. Sept. 13, 2005).

[4]"No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001), quoted in In re Fleetboston Financial Corp. Securities Litigation, 2005 WL 3579050, at *1 (D.N.J. December 28, 2005). In Eisenberg v. Gagnon, 766 F.2d 770, 785-86 (3d Cir. 1985), a class allegedly composed of 91 members was held to satisfy the numerousity requirement.  In re Tel-Save Sec. Litig., 2000 WL 1005087, at *4 (E.D. Pa. July 19, 2000) ruled that "[i]t is sufficient to say that in this case, where the plaintiffs allege that hundreds of investors have been defrauded, that the numerousity requirement is met."

[5]Accord, In re Nasdaq Market-Makers Antitrust Litig., 169 F.R.D. 493, 509 (S.D.N.Y.1996); Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 229 (D.N.J. 2005) (quoting In re Prudential Ins. Co. of America Sales Practices Litigation, 962 F.Supp. 450, 510 (D.N.J. 1997)).

[6]In re Honeywell International Inc. Securities Litigation, 211 F.R.D. 255, 260 (D.N.J. 2002) recognized that numerosity was obviously present in that the securities issuer "is of course a large and prominent publicly held company, and its SEC filings confirm that its shareholders number in the thousands. It is accordingly safe to conclude that investors who purchased Honeywell shares during the designated

In this case, the standard for numerosity is more than satisfied. According to the Company's Form 10-K for the year ended December 31, 2001 (which is during the Class Period), Sealed Air's common and preferred stock were both listed on the New York Stock Exchange, and over 83 million shares of common stock were outstanding as of March 20, 2002. See Declaration of Robert M. Zabb ("Zabb Declaration") filed herewith, Exhibit "A." Sealed Air's 2001 annual report to shareholders states that there were 9,592 holders of record of the Company's common stock and 7,823 holders of record of the preferred stock. (Zabb Declaration Exhibit "B"). Since the holders of record include brokerages holding stock in street name for numerous beneficial owners, there are likely far more beneficial owners than the over 16,000 holders of record. Accordingly, the numerosity requirement set as forth by

---

period are too numerous to be joined." In re Loewen Group Inc. Securities Litigation, 233 F.R.D. 154, 262 (E.D. Pa. 2005) held that "[t]he number of plaintiffs makes this case appropriate for class certification because joinder would be impracticable. TLGI was a nationally traded security with over 50 million shares outstanding at the start of the proposed class period. Millions of shares were traded during the class period by thousands of geographically-diverse shareholders."

See also, In re Safeguard Scientifics, 216 F.R.D. 577, 580 (E.D. Pa. 2003), ruling that "[e]ven though the exact number of shareholders that make up the class is unknown at this time, this Court finds that Plaintiffs have met the numerosity requirement, considering the millions of shares of Safeguard common stock that were publicly traded during the class period." Likewise, In Resource America Securities Litigation, 202 F.R.D. 177, 181 (E.D. Pa. 2001) held that "Resource America, Inc. had approximately 6,503,987 shares of common stock outstanding and actively traded on the NASDAQ, and therefore plaintiffs allege that the potential class consists of tens of thousands of members.... Therefore, the Court concludes that plaintiffs' proposed class meets the numerosity requirement of Rule 23(a)(1)."

the case law discussed above is clearly satisfied.

### B.   Rule 23(a)(2) Commonality is Satisfied since the Class's Claims All Stem from a Common Course of Conduct

Commonality of the claims of all class members is established where "there are

questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2).  This is shown

where the claims share "a common nucleus of operative facts."[7]   Identity of claims

is not required, and commonality as to even a single issue is sufficient.[8]  "Because the

requirement may be satisfied by a single common issue, it is easily met."  Baby Neal

for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994).   There is a "very low

threshold for commonality."  Barnes v. American Tobacco Co., 161 F.3d 127, 151

n.15 (3d Cir. 1998), cert. denied, 526 U.S. 1114 (1999), quoting Georgine v. Amchem

---

[7]"If [plaintiffs] show that there is a common nucleus of operative facts, they have met their burden for proving commonality." Kondratick v. Beneficial Consumer Discount Co., 2006 WL 305399, at *9 (E.D. Pa. February 8, 2006).  "Common questions are those which arise from a 'common nucleus of operative facts.'" Thomas v. SmithKline Beecham Corp., 201 F.R.D. 386, 392 (E.D. Pa. 2001)

[8]"Rule 23 does not require that all class members be identically situated, just that substantial common questions of either law or fact exist."  In re Lucent Technolgies Inc. Securities Litigation, 307 F.Supp.2d 633, 650 (D.N.J. 2004). "Commonality does not mandate that all class members make identical claims and arguments; instead, 'the commonality requirements will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" Johnston v. HBO Film Management, Inc., 265 F.3d 178, 184 (3d Cir. 2001), quoting In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 282, 310 (3d Cir. 1998).  In re Community Bank of Northern Virginia, 418 F.3d 277, 303 (3d Cir. 2005) reaffirms the "at least one [common] question" standard, quoting Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir.1994).

11

Prods. Inc., 83 F.3d 610, 627 (3d Cir. 1995).

Where "[a]ll plaintiffs, both individual representatives and members of the class, seek to establish the defendants' fraudulent course of conduct" under the federal securities laws, commonality of claims exists.   In re Loewen Group Inc. Securities Litigation, 233 F.R.D. 154, 162 (E.D. Pa. 2005).   When each member of the shareholder class has suffered damages as a result of identical misrepresentations which are alleged to have artificially inflated the stock price, commonality is present. In re Lucent Technologies, Inc., Securities Litigation, 307 F.Supp.2d 633, 640 (D.N.J.2004);[9] In re Ravisent Technologies, Inc. Securities Litigation, 2005 WL 906361, at *3 (E.D. Pa. April 18, 2005).[10]

---

[9]"Here, the commonality requirement is easily satisfied because common questions of law and fact exist. The basis of this suit is that Defendants issued false and misleading statements related to the Company's ability to manufacture optical networking products and the demand for those products and engaged in a pattern of improper revenue recognition practices to conceal the waning demand for the Company's products. The Fifth Amended Complaint alleges that this conduct caused Lucent stock to trade at artificially inflated prices during the Class Period. Thus, the claims of all Class Members arise from the same nucleus of operative facts and involve the same legal theories."   In re Lucent Technologies, Inc. Securities Litigation, 307 F.Supp.2d 633, 640 (D.N.J.2004)

[10]"Here, common questions of law and fact exist among the class members regarding Defendants' alleged misrepresentations in the IPO Registration Statement and the 1999 quarterly financial statements, whether the market price of Ravisent's common stock was artificially inflated due to these alleged misrepresentations, and whether class members suffered damages as a result. These allegations are sufficient to show questions of law and fact common to the class."   In re Ravisent Technologies, Inc. Securities Litigation, 2005 WL 906361, at *3 (E.D. Pa. April 18, 2005).

For each member of the plaintiff class who purchased stock of Sealed Air during the class period, the same types of common issues exist as in most cases arising from securities misrepresentations made to the investing public – *i.e.*, "the falsehood of the alleged misrepresentations, their materiality, and Defendants' scienter. This level of commonality is more than sufficient under Rule 23(a)(2)." In re Honeywell Intern. Inc. Securities Litigation, 211 F.R.D. 255, 260 (D.N.J. 2002). Accord, In re Tyson Foods, Inc., 2003 WL 22316548, at *3 (D.Del. Oct. 6, 2003).[11]

More specifically, whether Defendants' disclaimers of Sealed Air's fraudulent transfer liability were false and misleading, whether Defendants made such statements to the public with scienter, and whether such statements improperly inflated the price of Sealed Air's stock during the Class Period, thereby causing members of the Class to suffer a loss when the likelihood of Sealed Air's liability was revealed by Judge Wolin's ruling, are all issues common to the claims of each member of the proposed plaintiff class of investors. These common facts underlying the claims of all class members establish the existence of commonality sufficient

_____

[11]"In this case, the common legal and factual issues are: (1) whether the federal securities laws were violated by the defendants; (2) whether representations made to the investing public and [Sealed Air] shareholders during the Class Period omitted and/or misrepresented material facts...; (3) whether defendants failed to disclose material facts necessary to not mislead the investing public; and (4) whether the members of the Proposed Class have sustained damages and what the measure of those damages should be." In re Tyson Foods, Inc., 2003 WL 22316548, at *3 (D. Del. October 6, 2003).

under Rule 23 (a)(2) to support class certification.

**C.    Rule 23(a)(3) Typicality is Satisfied since the Plaintiff's Claims Arise from the Same Course of Conduct as the Claims of the Class**

"Typicality asks whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). The commonality and typicality criteria of Rule 23(a)(2) and Rule 23(a)(3) are often said to "overlap." This reflects that a named plaintiff's claims can be "typical" of all class members' claims only if the class claims share commonality.

The two are distinct requirements, however. "Commonality and typicality overlap in that they hinge on whether the class members have similar claims. However, commonality tests the sufficiency of the class itself by focusing on the class claims, while typicality tests the sufficiency of the named plaintiff by focusing on the relation between the named plaintiff and the class as a whole." In re Tel-Save Securities Litigation, 2000 WL 1005087, at *5 (E.D. Pa. July 19, 2000). "'[C]ommonality' like 'numerosity' evaluates the sufficiency of the class itself, and 'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiff." Hassine v. Jeffes, 846 F.2d 169, 176 n.4 (3d Cir. 1988).

Typicality usually turns on whether the legal theories of the named plaintiff's

claims are consistent with, or conflict with, the theories of the class's claims.[12]  In

securities cases in particular, "[t]he 'typicality' requirement is satisfied so long as the

Lead Plaintiffs, the other representatives, and the Class 'point to the same broad

course of alleged fraudulent conduct to support a claim for relief.'"  In re Lucent

Technologies, Inc. Securities Litigation, 307 Supp.2d 633, 640 (D.N.J. 2004)

(quoting Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 401 (D.N.J. 1990)).[13]

Here, as in Lucent and Honeywell, MPERS' claims are based on the same legal

and factual theories as those of the members of the Class.  Like the Class members,

MPERS must prove that the representations about Sealed Air's fraudulent transfer

liability were false, were made with scienter, caused the stock price of Sealed Air to

---

[12]The typicality "inquiry...centers on whether the named plaintiff[s'] individual circumstances are markedly different or... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001) (internal quotations omitted).  "The [typicality] criterion acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'" Id., quoting Georgine v. Amchem Prods., Inc., 83 F.3d 610, 631 (3d Cir.1996), aff'd sub nom., Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997).

[13]"[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 58 (3d Cir. 1994).  For example, in In re Honeywell International Inc. Securities Litigation, 211 F.R.D. 255, 260 (D.N.J. 2002), the court concluded that "[t]he representative Plaintiffs' claims arise from the same alleged series of related misrepresentations that they claim injured all members of the proposed class.  Their claims are therefore typical of those of the class for the purposes of the Rule."

be artificially inflated, and subsequently caused losses to shareholders.  In sum, MPERS "based their claims on fraud and misrepresentation, the same legal theories as the other Class Members.  Therefore, the typicality requirement is satisfied."  <u>In re Tel-Save Sec. Litigation</u>, 2000 WL 1005087, at *5 (E.D. Pa. July 19, 2000).

### D.   Rule 23(a)(4) Adequacy is Satisfied, Since MPERS Will Pursue This Litigation Through Competent and Experienced Counsel

 "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 625 (1997).  The Third Circuit holds "that the adequacy inquiry under Rule 23 'has two components designed to ensure that absentees' interests are fully pursued.'"  <u>In re Warfarin Sodium Antitrust Litigation</u>, 391 F.3d 516, 532 (3d Cir. 2004).[14]  The first component "tests the qualifications of the counsel to represent the class" and the second component seeks "to uncover conflicts of interest between named parties and the class they seek to represent."  <u>Id.</u>, quoting <u>In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions</u>, 148 F.3d 283, 313 (3d Cir. 1998).

Under the first prong of the adequacy test, "the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation...."  <u>Wetzel v. Liberty Mut. Ins. Co.</u>, 508 F.2d 239, 247 (3d Cir. 1975).  Here, Plaintiff's

---

[14]Quoting <u>Georgine v. Amchem Prods., Inc.</u>, 83 F.3d 610, 630 (3d Cir.1996), aff'd, <u>Amchem</u>, 521 U.S. at 591, 117 S.Ct. 2231.

counsel more than meets the standard.  The firm resumes of Plaintiff's counsel and liaison counsel are submitted as Exhibits "C" and "D" to the Zabb Declaration.  This Court has already stated, in the June 29, 2004 Order approving Lead Plaintiff and Lead Counsel, that Lead Counsel "possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors."  The Court also found that Plaintiff's liaison counsel "evidences competence in representing stockholders and consumers in complex matters."  This demonstrates that the Rule 23(a) standard is met.[15]

The second component of adequacy requires that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  Bradburn Parent/Teacher Store, Inc. v. 3M, 2004 WL 414047, at *3 (E.D. Pa. March 1, 2004), quoting East Tex. Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403 (1977).  Adequacy is established when "Lead Plaintiffs have a strong interest in establishing liability under federal securities law, and that they seek similar damages for similar injuries.  Consequently, the court concludes that Lead Plaintiffs'

---

[15]"The record reveals that each [lead counsel and liaison counsel] has participated in several successful securities fraud class actions in various federal courts throughout the United States."  In re Vicuron Pharmaceuticals, Inc. Securities Litigation, 233 F.R.D. 421, 428 (E.D. Pa. 2006).  In this case, Lead Counsel is "very experienced in prosecuting class action cases and have diligently and actively engaged in advancing the interests of the class members since the inception of this action."  In re Ravisent Technologies, Inc. Securities, 2005 WL 906361, at *5 (E.D. Pa. April 18, 2005).

interests are not in conflict with those of the Proposed Class, and that they will serve as adequate representatives." In re Tyson Foods, Inc., 2003 WL 22316548, at *6 (D.Del. October 6, 2003).

In this case, MPERS has the same interest in proving Defendants' liability and maximizing its claimed damages as does the entire Class and each of its members. Since the Amended Complaint alleges that the losses of the entire Class were caused by the same announcement (Amended Complaint ¶¶194-199), there is no potential conflict of interest between Plaintiff and the Class.

## VI.   THE CRITERIA OF RULE 23(b)(3) ARE MET IN THIS CASE

### A.   Predominance is Satisfied

Rule 23(b)(3) requires "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The criterion tests class cohesiveness by requiring significant common questions, not identity of claims.[16]  "The predominance test is readily met in most securities fraud

---

[16]"The inquiry 'tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation' and properly 'trains on the legal or factual questions that qualify each member's case as a genuine controversy....'" In re Vicuron Pharmaceuticals, Inc. Securities Litigation, 233 F.R.D. 421, 429 (E.D. Pa. 2006) (quoting In re Community Bank of Northern Virginia, 418 F.3d 277, 309 (3d. Cir. 2005)).  "In order to predominate, the common issues must constitute a 'significant part' of the individual cases." Chiang v. Veneman, 385 F.3d 256, 273 (3d Cir. 2004.  "[T]he presence of individual questions does not per se rule out a finding of predominance." In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 315 (3d Cir. 1998).

actions." In re AremisSoft Corp. Securities Litigation, 210 F.R.D. 109, 122 (D.N.J. 2002). "As the Supreme Court noted in Amchem, '[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws...' Amchem, 521 U.S. at 625." In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 314 (3d Cir. 1998). Since the claims of all class members in this case arise from identical misrepresentations, common questions of law and fact predominate. In re Ravisent Technologies, Inc. Securities Litigation, 2005 WL 906361, at *5 (E.D. Pa. April 18, 2005).[17] "The predominance requirement is easily satisfied in this litigation. The factual and legal questions presented are common to all class members and overshadow any minor differences between them. Indeed, common to all class members are the crucial allegations that [Sealed Air] made material misrepresentations...and that those statements artificially inflated the value of the corporation's stock." In re Vicuron Pharmaceuticals, Inc. Securities

---

[17]"[A]ll class members' claims arise out of the same conduct-Defendants' alleged omissions or misstatements in connection with Ravisent's Registration Statement and third and fourth quarter 1999 financial reports. If tried separately, each Plaintiff would be required to establish the same omissions or misrepresentations to prove liability. Because common issues of law and fact would be central at trial, the predominance requirement is met. See, e.g., Neuberger, 1998 U.S. Dist. LEXIS 18807, at *14 (holding that the predominance requirement was satisfied because the '[e]videntiary issues as to misrepresentations and materiality will be substantially identical for all class members'); Lerch v. Citizens First Bancorp., 144 F.R.D. 247, 252 (D.N.J.1992) (concluding predominance was met because all class members sought determination that defendants misrepresented and omitted material facts in violation of federal securities law)." In re Ravisent Technologies, Inc. Securities Litigation, 2005 WL 906361, at *5 (E.D. Pa. April 18, 2005).

Litigation, 233 F.R.D. 421, 428 (E.D. Pa. 2006).    See, also, In re Lucent

Technologies, Inc., Securities Litigation, 307 F.Supp.2d 633, 640 (D.N.J. 2004.)

      The Third Circuit recognizes that in securities cases, variance in damage claims

does not weigh against a finding of predominance.[18]  Also, even in cases requiring

direct proof of reliance, "the 'presence of individual questions as to the reliance of

each investor does not mean that the common questions of law and fact do not

predominate.'"  In re Prudential Ins. Co. America Sales Practice Litigation Agent

Actions, 148 F.3d 283, 315 (3d Cir. 1998), quoting Eisenberg v. Gagnon, 766 F.2d

770, 786 (3d Cir.1985).  This case is based on the fraud on the market theory, not

direct reliance (Amended Complaint ¶¶204-205), thereby strengthening the finding

of predominance.[19]

_____

     [18]"Although individual damage claims will differ depending on when and what
type of stock was acquired, these issues cast no doubt on the finding of
predominance."  In re AremisSoft Corp. Securities Litigation, 210 F.R.D. 109, 122
(D.N.J. 2002).  In this case, as in most securities law litigation, "[t]he principal
variance among the claims of the class members involves the calculation of damages.
The determination of damages owed to each class member will involve a
comparatively simple mathematical calculation once the class-wide questions
regarding liability are resolved."  In re Vicuron Pharmaceuticals, Inc. Securities
Litigation, 233 F.R.D. 421, 428 (E.D. Pa. 2006).

     [19]"The application of the 'fraud on the market' theory, which Plaintiffs rely
upon here to establish the element of reliance, results in the predominance of
common issues and permits class action treatment."  In re Lucent Technologies, Inc.
Securities Litigation, 307 F.Supp.2d 633, 640 (D.N.J. 2004).  Since "no individual
reliance determinations will be necessary if the plaintiffs successfully use the fraud
on the market theory" the need to establish reliance does not mitigate the
predominance of common issues herein.  In re Loewen Group Inc. Securities Litig,

**B.     Superiority is Satisfied**

The superiority requirement asks a district court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir.1996), aff'd, 521 U.S. 591 (1997).  "Fed.R.Civ.P. 23(b)(3) instructs that the matters pertinent to this inquiry include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." In re Community Bank of Northern Virginia, 418 F.3d 277, 309 (3d Cir. 2005).  "[I]t would be a rare case that satisfied all the requirements of Rule 23(a), and the predominance requirement of Rule 23(b)(3), and in which nevertheless class action was not deemed 'superior...' under the second prong of Rule 23(b)(3)." In re Honeywell International Inc. Securities Litig., 211 F.R.D. 255, 267 (D.N.J. 2002).

The efficiencies of litigating this case as a class action are clear from the perspective of the class members and that of the court system.   The large number of

---

233 F.R.D. 154, 167 (E.D. Pa. 2005).  Accord, In re Ravisent Technologies, Inc. Securities Litig., 2005 WL 906361, at *6 n.8 (E.D. Pa. April 18, 2005).

class members would suffer prohibitive expense in litigating their claims separately, and would inefficiently tie up judicial resources in duplicative litigation of virtually identical claims. "Judicial economy and sheer access to justice demonstrates that a class action here involves large numbers of Class Members with relatively small individual claims. The superiority requirement of Rule 23(b)(3) is met." In re Lucent Technologies, Inc. Securities Litig., 307 F.Supp.2d 633, 641 (D.N.J. 2004).[20]

As for factors (A) and (B) as listed in Rule 23(b)(3), Plaintiff is not aware of any other shareholder of Sealed Air filing any related litigation or expressing any interest in controlling this case or separate litigation. Plaintiff was the only applicant to be lead plaintiff. "[T]here appears to be little, if any, interest on the part of individual Class members in individually controlling this litigation. Indeed, were class certification denied, it would likely be the death-knell of most class members'

---

[20]"There are potentially thousands of claimants with varying degrees of injury." In re Tyson Foods, Inc., 2003 WL 22316548, at *7 (D.Del. October 6, 2003). "Separate lawsuits by all potentially affected securities holders would be prohibitively expensive for most plaintiffs and an inefficient use of judicial resources." In re Tel-Save Sec. Litig., 2000 WL 1005087, at *6 (E.D. Pa. July 19, 2000). "Resolving each of the claims against [Defendants Sealed Air and Dunphy] separately would usurp considerable judicial resources, involving thousands of separately filed claims in dozens of jurisdictions. Each plaintiff, in each lawsuit, would attempt to prove the same conduct, that the defendants orchestrated a comprehensive scheme to defraud investors. Considering the facts of this case from the perspectives of the judicial system, the potential class members, the parties, and the public at large, ...the economies of time, effort, and expense are best served by class certification." In re Loewen Group Inc. Securities Litigation, 233 F.R.D. 154, 167-168 (E.D. Pa. 2005).

claims, as the cost of individual litigation would be prohibitive vis-a-vis the potential recoveries. The Court is not presently aware of any significant litigation, apart from the instant case, arising out of these matters." In re Rent-Way Securities Litigation, 218 F.R.D. 101, 121 (W.D. Pa. 2003).

Factor C also weighs in favor of certifying the Class in this case. The litigation has been brought in the district in which Sealed Air is located. Judge Wolin, who presided over the adversary proceeding against Sealed Air which gave rise to the alleged fraud, held his judicial office in this district, although the Grace bankruptcy itself was filed in Delaware. Therefore, "there is certainly an interest in concentrating [this case] in this forum, as much of the evidence, and many of the witnesses, relevant to this litigation are located in this district." Id.

Factor D also favors certification of the Class. "[T]his securities fraud action does not present any unusual case management concerns applicable to class actions. Thus, the superiority requirement is met." In re Pharmaprint, Inc. Securities Litigation, 2002 WL 31056813, at *8 (D.N.J. April 17, 2002).

## VII.  MPERS IS WELL-QUALIFIED TO SERVE AS CLASS REPRESENTATIVE

Current Lead Plaintiff Miles Senn believes that MPERS will best serve the class as its representative in this case. MPERS is a public pension fund which provides a qualified ERISA plan for the municipal police officers of Louisiana. (Roche Declaration ¶ 4). As of June 30, 2005, MPERS' plan had net assets of

$1,328,792,481.  (Roche Declaration ¶5).

MPERS has a strong interest in maintaining the integrity of the U.S. securities markets.  The fund must, by statute, invest 55% to 65% of its total portfolio in equities and at least 10% of its total portfolio in one or more equity index funds.[21]

MPERS' general counsel has "attended conferences discussing Rule 23 and the PSLRA" and is aware of "the important role institutional investors serve to ensure the highest quality [of] representation in securities class actions."  He has "experience acting in a fiduciary capacity and supervising counsel in complex litigation, including participating in significant strategic decisions and monitoring outside counsel to ensure that they work effectively and efficiently."  (Roche Declaration ¶9).  To protect its interests, MPERS has participated previously as lead plaintiff in securities litigation.  (Roche Declaration ¶¶7-8).

MPERS will undertake its fiduciary responsibility in this case to protect the plaintiff class, including participation in important strategic decisions.  (Roche Declaration ¶ 10).  MPERS will require quarterly status reports from counsel.  (Roche Declaration ¶ 12).  MPERS is committed to "work actively with class counsel toward obtaining the largest possible recovery for the proposed Class...."  The fund is eminently qualified and will amply fulfill the roles of lead plaintiff and class

---

[21]See MPERS' Report for fiscal years ended June 30, 2005 and 2004 as reflected on the lampers.org website, notes to financial statements, n. 6 Investments.

24

representative as envisioned by the PSLRA and Rule 23.

VIII.    **MPERS SHOULD BE PERMITTED TO SERVE AS CLASS REPRESENTATIVE**

A.    **The Third Circuit and Other Courts of Appeals Mandate that Intervention Should be Permitted to Ensure the Participation of an Adequate Class Representative**

Fed.R.Civ.P. 23(d)(2) empowers the court to permit intervention by class members "for the protection of the members of the class...."  Pursuant to that mandate, the Third Circuit and numerous other circuit courts have ruled it essential that class members be permitted to intervene as class representatives if necessary to maintain the class action.  "[A]ffording an opportunity to provide a substitute [class representative] is the common practice."  Ritti v. U-Haul International, 2006 WL 1117878 (E.D.Pa. April 26, 2006), quoting David v. Thornburgh, 903 F.2d 212, 233 (3d Cir. 1990) (Becker, J. dissenting).  In Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 929 (3d Cir. 1986) the district court was criticized for dismissing subclasses merely because of the adequacy of class representatives, stating that "if the class representatives did not adequately represent the subclass, the proper remedy was to amend the class certification order or to permit additional plaintiffs to intervene. F.R.Civ.P. 23(d)."  See, also 3 Newberg on Class Actions § 7:28 (4th ed.).[22]  Courts of Appeals of the Second, District of Columbia and Eleventh Circuits

---

[22]"Before class determination, absent class members may be permitted to intervene to bolster class representation, in order to avoid problems with mootness

have ruled likewise.[23]

This rule has not changed with enactment of the PSLRA.  For example, in In re Avon Securities Litigation, 1998 WL 834366 (S.D.N.Y. Nov. 30, 1998) the court gave the plaintiff time to locate a substitute named plaintiff after the class representative withdrew, holding:

> [I]n the class action context, particularly in a situation such as this involving the withdrawal of the sole class representative after a motion for class certification has been filed, solicitation of parties to intervene as substitute class representatives may be entirely appropriate, if not required as part of class counsel's fiduciary duty." Id. at *10.

Avon cited the Manual for Complex Litigation (Third), Section 30.16 at 222, for the

_____

or adequacy of representation. Intervention after class certification is generally not necessary, because the plaintiff's ability to represent the class adequately has been determined."  3 Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 7:28 (4th ed.)(database updated June 2006).

[23]Birmingham Steel Corp. v. Tennessee Valley, 353 F.3d 1331 (11th Cir. 2003) held it was an abuse of discretion for the district court to fail to give class counsel time to locate an alternative class representative when the named class representative was held inadequate.  Baffa v. Donaldson, Lufkin & Jenrette Securities, 222 F.3d 52 (2d Cir. 2000) reviewed a ruling on two motions to intervene as class representative which had been filed because the original proposed class representative was held, in the course of a motion for class certification, to lack standing.  The district court had given the plaintiff approximately 30 days to substitute another plaintiff.  In endorsing the motion to intervene by one of the two applicants for class representative status, the circuit court necessarily approved the procedural replacement of the original class representative. Fink v. National Savings & Trust Co., 772 F.2d 951, 961 (D.C.Cir. 1985)(reversing denial of class certification because of questions regarding typicality and adequacy of class representatives, because the district court failed to consider possibility of subclasses, narrower class definition, or appointing substitute class representatives.).

principle that "to protect the interests of the class, class counsel should make reasonable efforts to recruit a new representative."   Id.

In re Cigna Corp. Securities Litigation, 2005 WL 3952802 (E.D.Pa. February 23, 2005) granted a motion to intervene by two class representatives where the named lead plaintiff's claim was called into question by an issue of loss causation.   The ruling reflects the close relationship between withdrawal of a class representative–which is well recognized under longstanding law—and substitution of a "lead plaintiff" as that term was newly conceptualized by the PSLRA.   Cigna granted a motion to name two new class representatives where:

> If, due to a failure to prove loss causation and/or economic loss, SERS is dismissed as a party or is deemed to be an unworthy class representative notwithstanding its Lead Plaintiff status, the interests of the putative class will clearly be at risk. Given the significance that the PSLRA has placed on the status and responsibility of the Lead Plaintiff in this type of case...and the fact that many putative class members have appropriately assumed that SERS will adequately represent the class,... the Court finds that any present or potential doubts about SERS being able to fulfill its role should be alleviated by allowing [two additional parties] to join SERS as proposed class representatives. Cigna, 2005 WL 3952802 at *1

Other judicial rulings, which directly discuss the relationship of lead plaintiff and class representatives, demonstrate that allowing the intervention of new class representatives remains essential under the PSLRA.  This is because even under the PSLRA's framework, the issue of possible withdrawal or dismissal of class representatives which existed before the Act still remains.

27

> There is no requirement found in the plain meaning of the statute that a Lead Plaintiff accept designation of class representative under Rule 23, and the statute does not provide for any specific action by the Court should it turn out after a Lead Plaintiff has been appointed that Lead Plaintiff should on further examination fail to meet all of the requirements of Rule 23, or simply withdraw his or her expression of willingness to serve as Class Representative....  In re Oxford Health Plans, Inc. Sec. Litig., 191 F.R.D. 369, 378-379 (S.D.N.Y.2000).

In fact, in the context of a lead plaintiff motion, the PSLRA's lead plaintiff is to be evaluated for acceptability under the Rule 23 criteria for class representative on only a "prima facie" basis, thereby anticipating that the lead plaintiff is later subject to rejection as a class representative.[24]  Additionally, new class representatives can be added by a lead plaintiff to ensure standing on all claims, without also being named as lead plaintiffs.  Hevesi v. Citigroup, 366 F.3d 70, 83 (2d Cir. 2004).[25]  To address

---

[24]Although the "most adequate" plaintiff under the PSLRA lead plaintiff criteria is one which "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)), this determination is made only on a "prima facie" basis.  In re Cendant Corp. Litigation, 264 F.3d 201, 265 (3d Cir. 2001) and "without prejudice to the possibility of revisiting that issue in considering a motion for class certification."  Greebel v. FTP Software, Inc., 939 F.Supp. 57, 60 (D.Mass. 1996)."  See, also In re Lucent Technologies, Inc., Securities Litigation, 194 F.R.D. 137, 150 n. 17 (D.N.J. 2000), holding that "The determination, however, that some or all of the Proposed Lead Plaintiffs meet the requirements of Rule 23 does not preclude revisiting the issue at the class certification stage."

[25] See In re Global Crossing, Ltd. Securities Litigation, 313 F.Supp.2d 189, 205 (S.D.N.Y. 2003) ("Judges presiding over complex securities class actions under the PSLRA have repeatedly rejected arguments, like those defendants raise here, that seek to confuse the role of lead plaintiffs under the PSLRA with that of named plaintiffs for purposes of ordinary class action standing law, or to claim that the individual lead plaintiff must have standing to bring all of the claims asserted in the class action complaint."); In re WorldCom, Inc. Securities Litigation, 294 F.Supp.2d

these issues under the PSLRA requires intervention of new class representatives, just as was well-established as a means for dealing with class representative-related issues in securities cases filed before passage of the PSLRA, as well as in non-securities lawsuits.

**B.     The Standards for Joinder Under Fed.R.Civ.P. 24(a), 24(b) and 21 are Met**

MPERS' intervention is appropriate either as of right (Fed.R.Civ.P. 24(a)), or permissively (Fed.R.Civ.P. 24(b)).  MPERS also can be joined as a party by motion of Plaintiff under Fed.R.Civ.P. 21.

"Intervention should...be allowed under Federal Rule of Civil Procedure 24(a) as of right whenever it appears that the named representative cannot adequately represent the interests of the class." Diduck v. Kaszycki & Sons Contractors, Inc., 147 F.R.D. 60, 62 (S.D.N.Y. 1993).  Such intervention is proper where "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation."  Mountain Top Condominium Ass'n v. Dave Stabbert, 72 F.3d 361, 366 (3d Cir. 1995).

---

392, 422 (S.D.N.Y. 2003). ("The Underwriter Defendants have not shown that there is any legal bar to a lead plaintiff asking other plaintiffs to join a lawsuit as named plaintiffs in order to represent more broadly the interests of the class at the time of the filing of the consolidated class complaint.").

MPERS clearly has a protectable interest as a class member. That interest will not be adequately represented upon the withdrawal of Mr. Senn.

MPERS' application to assume class representative status is unquestionably timely. Timeliness is "measured from the point at which the applicant knew, or should have known, of the risk to its rights." U.S. v. Alcan Aluminum, Inc., 25 F.3d 1174, 1183 (3d Cir. 1994). Here, MPERS determined that it would intervene immediately upon learning of Mr. Senn's desire to withdraw.

When considering whether there has been prejudicial delay in moving to intervene, "[t]he mere passage of time, however, does not render an application untimely....[T]he critical inquiry is: what proceedings of substance on the merits have occurred?... This is because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." Mountain Top Condominium Ass'n v. Dave Stabbert, 72 F.3d 361, 369-370 (3d Cir. 1995). Courts recognize that motions to intervene during the class certification stage of a case, and when the case is just on the threshold of discovery, are timely, regardless of the time that may have previously elapsed. Ardrey v. Federal Kemper Ins. Co., 142 F.R.D. 105, 117 (E.D.Pa.1992).[26] Moreover, there is

---

[26]Ardrey v. Federal Kemper Ins. Co., 142 F.R.D. 105, 117 (E.D.Pa. 1992) allowed an intervenor to join the class action as a named plaintiff where "despite the long period of time that has elapsed between the filing of the complaint and the motion for intervention, this proceeding is in its early stages. The issue of class maintenance remained before the Court when the motion for intervention was filed.

no potential prejudice since the Defendants are just now embarking on class certification discovery.  Id.

Permissive intervention would also be proper.  For permissive intervention, "[t]here are three criteria under Rule 24(b): A. The motion must be timely; B. The main action must have a question of fact or law in common; and C. The movant must have an independent ground for federal jurisdiction."  In re Cendant Corp. Securities Litigation, 109 F.Supp.2d 273, 276 (D.N.J. 2000).   These criteria are met: (a) timeliness is clear as discussed above, (b) MPERS' claims are identical to those reflected in the current complaint, and (c) jurisdiction under Section 27 of the Exchange Act of 1934 and 28 U.S.C. § 1331(a) is proper over MPERS as it was over Miles Senn.  Additionally, a court "must balance any...delay or prejudice against the benefits to be derived from intervention."  Contawe v. Crescent Heights of America, Inc., 2005 WL 1400383 at *2 (E.D.Pa. June 14, 2005).  As discussed above, there is no such undue delay or prejudice here.  And the benefits to be derived in terms of judicial economy and efficiency are substantial, as reflected in the case law discussed above which holds that class actions are a preferred method of adjudicating securities claims.

The standards for joinder of an additional party by motion under Fed.R.Civ.P. 21 are virtually identical to those for permissive intervention.  So they likewise are

Further, the proceedings have yet to move forward on the merits."

present.[27]

## IX.   THE NEW CLASS REPRESENTATIVE SHOULD ALSO BE SUBSTITUTED AS LEAD PLAINTIFF

Although the foregoing case law reflects that a new class representative need not necessarily assume the role of lead plaintiff,[28] such a measure is within the Court's discretion and would be appropriate herein, as reflected in (1) MPERS' qualifications to serve, (2) the Court's managerial discretion to structure an efficient lead plaintiff/class representative structure, and (3) case law on substitution of lead plaintiffs.

---

[27]Fed.R.Civ.P. 21 provides that "parties may be dropped or added by order of the court on motion of any party or of its own initiative...." "The court's decision to permit joinder is based on whether the claims of the additional plaintiffs arose out of the same or separate acts or occurrences whether the party seeking joinder has unnecessarily delayed the proceedings; and whether the nonmovant would be prejudiced by the addition." Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 98 (S.D.N.Y. 1997).

[28]Hevesi v. Citigroup Inc., 366 F.3d 70, 83 (2d Cir. 2005) ruled that "we perceive no substantial legal argument in support of such a per se rule" that all class representatives must also be lead plaintiffs. In re WorldCom, Inc. Securities Litigation, 294 F.Supp.2d 392 (S.D.N.Y.2003) rejected the notion that the naming of new class representatives required revisiting lead plaintiff issues, noting that defendants' argument "confuse[s] the inquiries to be made at three separate stages of this action: the appointment of lead plaintiff, the motion to dismiss, and the motion to certify a class" (id at 421) and "The time for the selection of lead plaintiff is over." Id. at 422.

MPERS fits the profile for a lead plaintiff envisioned by Congress when enacting the PSLRA. MPERS has far more money at stake than the current lead plaintiff, having suffered approximately $1.2 million in losses. (Roche Declaration ¶ 6). Therefore MPERS' appointment is consistent with the provision of "the PSLRA requir[ing] courts to appoint as lead plaintiff the 'most adequate plaintiff'-the plaintiff with the most money at stake." 15 U.S.C. § 78u-4(a)(3). The theory behind this requirement is that plaintiffs with the largest financial interests, typically institutional investors, will best represent the plaintiff class's interests and will choose the best counsel.'" In re Merck & Co., Inc. Securities Litig., 432 F.3d 261, 266 (3d Cir. 2005).

MPERS is a well-established institutional investor with the sophistication and capacity to devote professional oversight to "monitor attorneys to ensure faithful service to the class" as is expected of a lead plaintiff. In re Cendant Corp. Securities Litigation, 404 F.3d 173, 191 (3d Cir. 2005). MPERS "would have every incentive to make sure that class counsel are doing a good job prosecuting their claims." In re Cendant Corp. Sec. Litig., 404 F.3d 173, 192 (3d Cir. 2005). MPERS' status as institutional investor is also consistent with the Congressional scheme to encourage participation by precisely that type of plaintiff.[29]

---

[29]Congress foresaw that "[t]he plaintiff with the largest stake in a given securities class action will almost invariably be a large institutional investor, and the PSLRA's legislative history expressly states that Congress anticipated and intended

MPERS can be appointed lead plaintiff through exercise of "the district court's broad discretion to adopt procedural innovations in order to facilitate management of class actions." Hevesi v. Citigroup Inc., 366 F.3d 70, 83 (2d Cir. 2004). Hevesi holds that the district court's decision naming class representatives who are not lead plaintiffs "was a managerial judgment that is entitled to deference." Id. Such managerial discretion is to be exercised to foster the purposes of the PSLRA, which specifically include a lead plaintiff/class representative structure which would encourage and enable those parties to exercise their control and oversight responsibilities.[30] It is evident that having a class representative also serve as lead plaintiff will strengthen that ability for both roles to be carried out timely,

---

that such investors would serve as lead plaintiffs. See S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 ('The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief is the 'most adequate plaintiff.'"). In re Cendant Corp. Litigation, 264 F.3d 201, 243-244 (3d Cir. 2001).

[30]Hevesi therefore counsels that any lead plaintiff/class representative structure should not "contravene the main purpose of having a lead plaintiff-namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." 366 F.3d at 82 n. 13. The unwieldiness of having to cobble together a lead plaintiff group would be contrary to the PSLRA's purpose of empowering the lead plaintiff to exercise control. Id.

The Third Circuit similarly recognizes that a court should exercise managerial discretion over group lead plaintiffs to serve the PSLRA purpose of fostering the lead plaintiff's control. In re Cendant Corp. Litigation, 264 F.3d 201, 267 (3d Cir. 2001) mentions that the court should restrict in number any group comprising a lead plaintiff so as to support "the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation...."

consistently and without conflict.

In re Initial Public Offering Securities Litigation, 214 F.R.D. 117 (S.D.N.Y. 2002) ("In re IPO") permitted a substitution of a new lead plaintiff in three cases where the original lead plaintiff withdrew.  The court explained that "where a new lead plaintiff is willing to step forward, there is no need to start the process anew" of publishing notice to the class.  Id. at 122 n. 6.  Since "no other putative class member ever filed a lawsuit or moved for appointment as lead plaintiff" there were no persons competing for lead status that needed to be considered.   Id.  See also, In re IPO, 224 F.R.D. 550, 552 (S.D.N.Y. 2004) allowing substitution of three other lead plaintiffs for withdrawing, already-designated lead plaintiffs.  The same facts hold true here: notice was published and no other persons applied to be lead plaintiff in this case. Therefore, Plaintiff's motion to substitute MPERS as lead should be approved.

In Coopersmith v. Lehman Broth., Inc., 344 F.Supp.2d 783, 792 (D.Mass.2004) after the court denied the motion of the sole movant for lead plaintiff status another party filed a substantially similar class action and moved for lead plaintiff status.  The court concluded that "because no one else filed a complaint or moved for appointment after Swack was disqualified, no further publication [of a notice to the class] is necessary" and that "Congress' intent to ensure that the lead plaintiff is appointed at the earliest possible time, and to expedite the lead plaintiff process will be effectuated by appointing Coopersmith as lead plaintiff at this time."  Id. at 793.

 In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 2003 WL

21033152 (S.D.N.Y. May 02, 2003), appointed new lead plaintiffs when the

originally-appointed lead plaintiffs moved to withdraw.  Cases which routinely

approve withdrawal of one lead plaintiff where one or more lead plaintiffs remain

also show the court's authority to permit such substitution of parties.[31]  See, also,

Metro Services Inc. v. Wiggins, 158 F.3d 162, 165 (2d Cir. 1998) holding that since

the district court's order granting lead plaintiff status "will be subject to continuing

reassessment throughout the course of the litigation." It was not a final appealable

order under the collateral order doctrine because the court retained continuing

discretion over the appointment of the lead plaintiff.

## X.    MPERS' CHOICE OF CO-LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel,

subject only to approval of the Court.  See §21D(a)(3)(B)(v) of the Exchange Act.

Thus, the Court should not disturb the Lead Plaintiff's choice of counsel unless

"necessary to protect the interest of the plaintiff class."    15 U.S.C. §78u-

---

[31]See In re Bank One Sec. Litig., 2002 WL 989454 at *1 (N.D.Ill. May 14, 2002)(court granted oral motion of lead plaintiff to withdraw); In re Verisign, Inc., 2005 WL 88969 at *1 n. 1 (N.D.Cal. Jan. 13, 2005) (" two of the original six lead plaintiffs have since withdrawn from this lawsuit"); In re Insurance Mgmt. Solutions Group Inc. Sec. Litig., 206 F.R.D. 514, 515 (M.D.Fla. 2002) ("just six days before the motion for class certification was filed, the Court granted the withdrawal of Muriel Goodman as a named Plaintiff and class representative, leaving Thomas Schmidt as the lead Plaintiff").

4(a)(3)(B)(iii)(II)(aa).  As discussed above in Section V.D., this Court has already approved current Plaintiff's counsel and liaison counsel in its June 29, 2004 Order. Their firm resumes are resubmitted as concurrently filed Zabb Declaration Exhibits "C" and "D."  MPERS wishes to retain current lead counsel and also to appoint the equally qualified firm of Pomerantz Haudek Block Grossman & Gross LLP as co-lead counsel.  Their firm resume is submitted herewith in the  Zabb Declaration as Exhibit "E".  MPERS' choice of the Pomerantz firm, which MPERS has worked with before, as co-counsel should be affirmed[32].  Cf. In re Able Laboratories Securities Litigation, 425 F.Supp.2d 562, 573 (D.N.J.2006) holding that "Since it appears to this Court that the IIG, the lead plaintiff, has carefully selected qualified counsel, this Court will not disturb that choice."

//

//

//

//

//

---

[32]"[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices. It is not enough that the lead plaintiff selected counsel or negotiated a retainer agreement that is different than what the court would have done; the question is whether judicial intervention is "necessary to protect the interests of the plaintiff class." In re Cendant Corp. Litigation, 264 F.3d 201, 274 (3d Cir. 2001).

## XI.   CONCLUSION

For the foregoing reasons, this motion should be granted.

Dated: November 22, 2006                 SQUITIERI & FEARON, LLP

**_S/Lee Squitieri_**
Olimpio Lee Squitieri   (OLS-1684)

26 South Maple Avenue
Suite 202
Marlton, New Jersey 08053
Telephone:  (856) 797-4611
Facsimile:   (856) 797-4612

Lionel Z. Glancy
Robert M. Zabb
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California  90067
Telephone:   (310) 201-9150
Facsimile:   (310) 201-9160

**Attorneys for Lead Plaintiff and Co-Counsel for Intervenor Municipal Police Employees' Retirement System of Louisiana**

Patrick V. Dahlstrom
Pomerantz Haudek Block Grossman
  & Gross LLP
One North La Salle Street #2225
Chicago, Illinois 60602
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184

38

Marc I. Gross
Robert J. Axelrod
Pomerantz Haudek Block Grossman
 & Gross LLP
100 Park Avenue 26th Floor
New York, New York 10017
Telephone:   (212) 661-1100
Facsimile:   (212) 661-8665

**Co-Counsel for Intervenor Municipal Police Employees' Retirement System of Louisiana**

## <u>PROOF OF SERVICE BY MAIL, E-MAIL/E-FILING</u>

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court.  I am over the age of 18 and not a party to the within action. My business address is 26 South Maple Avenue, Suite 202, Marlton, New Jersey 08053.

On November 22, 2006, I served the following:

<blockquote>

1     PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

</blockquote>

on the parties shown below via e-mail and by posting electronically via the court's ECF program.

## SEE SERVICE LIST

Executed on November 22, 2006, at Marlton, New Jersey.

I certify under penalty of perjury that the foregoing is true and correct.

*<u>S/Lee Squitieri</u>*
Olimpio Lee Squitieri   (OLS-1684)

# SERVICE LIST

<table>
<tr><td><strong><u>For The Defendants</u></strong></td><td><strong><u>For The Plaintiffs</u></strong></td></tr>
<tr><td>

Gregory B. Reilly<br>
Lowenstein Sandler PC<br>
65 Livingston Avenue<br>
Roseland, NJ 07068<br>
Telephone:  (973) 597-2460<br>
Facsimile:   (973) 597-2461<br>
via email only<br>
to: greilly@lowenstein.com

</td><td>

Robert M. Zabb<br>
Glancy Binkow & Goldberg LLP<br>
1801 Avenue of the Stars, Suite 311<br>
Los Angeles, CA 90067<br>
Telephone:  (310) 201-9150<br>
Facsimile:   (310) 201-9160<br>
via e-mail only<br>
to: info@glancylaw.com

</td></tr>
<tr><td>

Daniel J. Kramer<br>
Andrew Gordon<br>
Paul Weiss Rifkind Wharton &<br>
Garrison LLP<br>
1285 Avenue of the Americas<br>
New York, NY 10019<br>
Telephone:  (212) 373-3000<br>
Facsimile:   (212) 757-3990<br>
via mail and via e-mail to:<br>
dkramer@paulweiss.com

</td><td>

Patrick V. Dahlstrom<br>
Pomerantz Haudek Block Grossman<br>
 & Gross LLP<br>
One North La Salle Street #2225<br>
Chicago, Illinois 60602<br>
Telephone:  (312) 377-1181<br>
Facsimile:   (312) 377-1184<br>
via e-mail only<br>
to: pdahlstrom@pomlaw.com

</td></tr>
<tr><td></td><td>

Marc I. Gross<br>
Pomerantz Haudek Block Grossman<br>
 & Gross LLP<br>
100 Park Avenue 26th Floor<br>
New York, New York 10017<br>
Telephone: (212) 661-1100<br>
Facsimile: (212) 661-8665<br>
via e-mail only<br>
to: marcigross@pomlaw.com

</td></tr>
</table>