NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>T.J. DERMOT DUNPHY and SEALED AIR CORPORATION,<br><br>　　　　　　Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 03-CV-4372 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for class certification by Plaintiffs Louisiana Municipal Police Employee's Retirement System ("MPERS") and all others similarly situated, pursuant to FED. R. CIV. P. 23(a) and 23(b). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiffs' motion for class certification is **granted**.

**I.　BACKGROUND**

W.R. Grace & Co. ("Grace") and Sealed Air Corporation ("Sealed Air") were involved in a corporate transaction in 1998 which lead to the subject claim. (Amended Complaint ("Compl.") ¶ 45). Grace was made up of several divisions of business, one of which was the Grace packaging division, which manufactured packaging products and specialized in packaging perishable foods.

1

Sealed Air is a holding company that, through its subsidiaries, manufactures and sells a wide range of food and protective packaging products.

Before 1998, Grace faced growing asbestos liability problems. Grace's asbestos liability problems stemmed from its former asbestos-containing insulation business. (Compl. ¶ 40). Additionally, Grace accumulated liabilities from its 1963 acquisition of Zonolite Co. by assuming all of Zonolite's liabilities. (Compl. ¶ 42). Grace was involved with asbestos litigation for decades. (Compl. ¶ 40).

By the late 1970's, Grace was considering divestment of asbestos-related businesses in order to shelter the company's non-asbestos business areas. In a 1996 transaction, Grace spun off its medical care business to isolate those assets from asbestos liability. In a 1998 transaction, Grace spun off its packaging division of the company and absorbed Sealed Air packaging, in an effort to further insulate its non-asbestos businesses from the threat of liability. (Compl. ¶ 50). Thus, the corporate defendant in this action, currently bearing the name Sealed Air, is the same entity which prior to the 1998 transaction, was known as W.R. Grace & Co. This 1998 transaction is the heart of the subject litigation.

The significant issue in the 1998 transaction was whether Sealed Air, by merging with Grace, would be exposed to liability arising out of the asbestos lawsuits associated with Grace's chemical businesses. This issue turns on whether Grace would be solvent after the acquisition, because if insolvent, then the 1998 transaction would be deemed a fraudulent transfer, rendering Sealed Air liable.

In a joint proxy statement issued in connection with the 1998 transaction, Grace and Sealed Air acknowledged the potential for fraudulent transfer claims by creditors, but reassured

investors that no fraudulent transfer occurred.  Additionally, Sealed Air and Grace stated that based on available information from their legal, financial, and other advisors, Sealed Air and Grace believed that they would be able to satisfy all liabilities as they became due.  (Compl. ¶ 63).

In an effort to prove Grace's solvency and avoid fraudulent transfer liability, Sealed Air would need to demonstrate that the spin-off's assets exceeded its liabilities including the asbestos liabilities.  (Compl. ¶ 72).  In March 1997, Sealed Air's counsel retained KPMG Peat Marwick LLP ("KPMG") to estimate costs of currently pending and future bodily injury claims related to Sealed Air's production of insulating material containing asbestos.  (Compl. ¶ 72).  KPMG prepared a report of the solvency analysis, not publicly disclosed, which projected Sealed Air's expected future asbestos claim liability.  (Compl. ¶ 87).

The parties dispute whether KPMG's report was conclusive.  Sealed Air failed to disclose to KPMG that it had suppressed asbestos claims at the time of the 1998 transaction.  (Compl. ¶¶ 85-96).  Additionally, the report failed to take into account the asbestos liabilities arising from contamination from mining operations at Libby, Montana; those liabilities have resulted in indictments and pending criminal proceedings against Grace officials.  (Compl. ¶¶ 97-102).

In 2001, Grace filed for bankruptcy due to an increasing number of asbestos related bodily injury claims.  (Compl. ¶ 104). In the Grace bankruptcy proceedings, Sealed Air was sued by the asbestos claimants' creditors' committee.   (Compl. ¶ 104).  The basis of that lawsuit was a claim that the 1998 transaction constituted a fraudulent transfer.   (Compl. ¶ 106).  The complaint in the fraudulent transfer proceeding was filed in March 2002, and the case was numbered Adversary Proceeding 02-02210.  (Compl. ¶ 106).

On July 29, 2002, United States District Judge Wolin issued an opinion in the Adversary

Proceeding. That ruling concerned a pre-trial *in limine* determination of the choice of law and legal standards to be applied at the upcoming trial to determine Grace's solvency. (Compl. ¶ 107). This ruling eased the burden of proof for asbestos plaintiffs to prove that the transfer was fraudulent and designed to shield Grace's assets from asbestos claims. Judge Wolin ruled that Grace was aware that at the time of the 1998 transaction, Grace faced growing asbestos liabilities and therefore was insolvent when Sealed Air acquired it. This disclosure resulted in a two-day, 60% decline in the price of Sealed Air stock. Sealed Air was charged $850,000,000 to reflect settlement of the fraudulent transfers. (Compl. ¶¶ 194-201). However, prior to this announcement, Sealed Air denied that it could be liable for a fraudulent transfer in order to inflate Sealed Air's stock price.

Former Lead Plaintiff Miles Senn withdrew from this action, and this Court substituted MPERS as Lead Plaintiff. MPERS, a pension fund with approximately $1.3 billion in net assets, is the class representative. MPERS contends that it purchased Sealed Air securities prior to the critical disclosure date and continued to hold them through the disclosure. MPERS also argues that it has suffered $1,204,771 in losses. MPERS has appointed Pomerantz Haudek Block Grossman & Gross LLP as lead counsel and Glancy Binkow & Goldberg LLP as co-class counsel.

## II.  STANDARD OF REVIEW

To obtain class certification, the moving party must prove that the class action satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. These requirements are (1) numerosity, (2) commonality, (3) typicality and (4) adequacy. In addition, pursuant to Rule 23(b)(3), the Court must determine if Plaintiff has satisfied requirements of predominance and superiority--namely, whether common questions of law or fact predominate and whether the class

action represents the superior method for adjudicating the case. Newton v. Merril Lynch, 259 F.3d 154, 181 (3d Cir. 2001). As movant, MPERS bears the burden of demonstrating that all the requirements of Rule 23 of the Federal Rules of Civil Procedure are met. Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 386 (D.N.J. 1998).

### III.   DISCUSSION

#### A.   Rule 23(a) Requirements

##### i.   Numerosity

To satisfy the requirement of Rule 23(a)(1), the proposed class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). In this context, "impracticability does not mean impossibility but only the difficulty or inconvenience of joining all members of the class." Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 406 (D.N.J. 1990) (quoting Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). In In re Honeywell Int'l Inc., this Court recognized that numerosity was obviously present because the securities issuer "is of course a large and prominent publicly held company, and its SEC filings confirm that its shareholders number in the thousands." 211 F.R.D. 255, 260 (D.N.J. 2002).

Here, according to Sealed Air's Form 10-K for the year ending December 31, 2001, its common stock and preferred stock were both listed on the New York Stock Exchange, recognized as an efficient market, and over 83 million shares of common stock were outstanding as of March 20, 2002. Further, according to Sealed Air's 2001 annual report to its shareholders, there were 9,592 holders of record of the common stock and 7,823 holders of record of the preferred stock. Based on the foregoing, it is the finding of this Court that joinder of all members of this proposed

class is impracticable and thus, the numerosity requirement of Rule 23(a)(1) has been met.

### ii. Commonality

Rule 23(a)(2) states that commonality exists if "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). All claims or facts do not have to be common to all class members; "the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). Further, "factual differences among the putative claims of the class members will not defeat certification." Baby Neal, 43 F.3d at 56. Lastly, with respect to the related criteria of commonality, the United States Court of Appeals for the Third Circuit "has recognized that courts have set a low threshold for satisfying this requirement." Georgine v. Amchem Prods. Inc., 83 F.3d 610, 627 (3d Cir. 1996).

Here, Plaintiff asserts that each member of the class who purchased Sealed Air stock during the Class Period alleges that the same nucleus of facts caused their injuries. Specifically, whether Defendants' disclaimers of Sealed Air's fraudulent transfer liability were false and misleading, whether Defendants made such statements to the public with scienter, whether such statements improperly inflated the price of Sealed Air's stock during the Class Period, and whether members of the Class suffered a loss when Sealed Air's liability was disclosed by Judge Wolin's Opinion and Order. All these issues are common to the claims of each member of the proposed class. "Where [a]ll plaintiffs, both individual representatives and member of the class, seek to establish the defendants' fraudulent conduct under the federal securities laws, commonality is found to exist." In re Loewen Gorup Secs. Litg., 233 F.R.D. 154, 162 (D.Pa. 2005). Thus, the claims of all the class members arise from the same nucleus of operative facts and involve the same legal theories. For these reasons, Rule 23(a)(2)'s commonality requirement

is satisfied.

### iii. **Typicality**

To satisfy Rule 23(a)(3)'s typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Sun Chem., 210 F.R.D. at 140 (citing Baby Neal, 43 F.3d at 57). The "typicality" requirement is satisfied as long as the Lead Plaintiff, the other representatives, and the Class "point to the same broad course of alleged fraudulent conduct to support a claim for relief". In re Lucent Techs., Inc. Sec. Litig., 307 F. Supp. 2d 633, 640 (D.N.J. 2004). Similar to the commonality requirement, "factual differences between the claims of the putative class members do not defeat certification." Baby Neal, 43 F.3d at 56. Further, "[i]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong presumption that the claims of the representative parties will be typical of the absent class members." Sun Chem., 210 F.R.D. at 140 (quoting In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1035 (N.D. Miss. 1993)).

Typicality is only destroyed "where the defenses against named plaintiffs are likely to consume a significant portion of the litigant's time and energy and where there is a danger that preoccupation with defenses unique to the representatives will cause absent class members to

suffer." In re Systems Software Assocs., Sec. Litig., 2000 U.S. Dist. LEXIS 18285 *6 (D. Ill. 2000). The Third Circuit has held that in order to defeat class certification, a defendant must show the "likelihood a unique defense will play a significant role at trial." Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir. 2006). It should be noted that, "a unique defense is merely a factor that informs the court's decision on class certification and need not destroy typicality." In re Systems, 2000 U.S. Dist LEXIS 18285 at *6.

Here, the proposed MPERS plaintiffs assert that their claims are based on the same legal and factual stories. MPERS also argues that, like the Class Members, they must prove that the representation about Sealed Air's fraudulent transfer liability were false; were made with the scienter; caused the stock price of Sealed Air to be inflated, and subsequently caused losses to shareholders.

Defendants argue that MPERS fail to meet the typicality requirement because MPERS is subject to unique defenses that render them an atypical class representative. First, Defendants claim that MPERS is subject to a unique defense of fraud on the market doctrine to establish reliance. Defendants argue that MPERS was aware at the time of the stock purchases that Sealed Air faced a "material risk" and assumed that Sealed Air would be liable for between $900 million to $1.5 billion in claims, and despite this purchased Sealed Air stock. Second, Defendants argue that MPERS is subject to unique defenses concerning loss causation. Defendants argue that Judge Wolin's issuance of the Order did not disclose the alleged fraud but, rather, only established the legal standard that could be applied at a trial. Thus, Defendants argue Sealed Air's price dropped solely because the Order adopted a legal standard that made liability easier to establish, not because of the alleged misrepresentation of the fraudulent transfer liability. Conversely, Plaintiffs

argue that loss causation is established because the Order disclosed Defendants' alleged fraud, and this disclosure of the fraud caused the stock price to decline. Lastly, Defendants argue that MPERS' investment manager contradicts the allegations in its complaint on this loss causation issue, and if MPERS is permitted to serve as class representative, the testimony of the investment manager will become a focus of litigation.

As to the existence of these so-called unique defenses that Defendants have put forth, these entail the merits of the case, and are not within the purview of a motion for certification. See Neuberger v. Shapiro, 1998 U.S. Dist. LEXIS 18807 (E.D. Pa. 1998). This Court's focus should not be upon the merits, but upon whether the overall scenario is sufficiently similar to ensure that the Plaintiff will represent the claims of the class during the course of the litigation. In this case, MPERS' claim arises from the same course of conduct as the claims of the proposed Class Members, namely the alleged artificial inflation of the market price of Sealed Air Stock caused by Defendants' alleged misrepresentations. MPERS stands in the same position as other proposed Class Members in this case. Accordingly, it is the finding of this Court that the Rule 23(a)(3) typicality requirement is satisfied.

   **iv.**    **Adequacy of Representation**

To satisfy Rule 23(a)(4)'s adequacy of representation factor, "the representative parties must fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To assess whether this requirement is met, the Court must look to two factors: "(1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class." Prudential I, 962 F. Supp. at 519.

      a.      <u>Qualification of the Proposed Class' Attorney</u>

Here, MPERS has appointed the Pomerantz Firm as lead counsel and the Glancy Firm as co-counsel. The Pomerantz firm has briefed and argued in federal securities litigation, as well as class actions. Defendants challenge the ability of Plaintiffs' co-counsel to wage this litigation. Defendants argue that the Glancy Firm failed to perform up to their fiduciary duties as lead counsel to Senn, the former plaintiff. Pursuant to the amended complaint, however, the Pomerantz Firm is now lead counsel.

The Court finds no merit to Defendants' contention. As to their counsel, the Pomerantz Firm is lead counsel, and the Court perceives both firms to be competent to conduct this litigation. Both firms have extensive experience in both the class action and securities fields, and both firms working together can provide adequate class counsel. Thus, the adequacy of representation as it relates to counsel is satisfied.

      b.      <u>Protection of Class Interests</u>

With regard to the second prong, the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent" and does not mandate that the interests of all class members be identical. <u>Amchem Prods. Inc. v. Windsor</u>, 521 U.S. 591, 625 (1997). "A class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class," <u>Pickett v. Iowa Beef Processors</u>, 209 F.3d 1276, 1280 (11th Cir. 2000). Further, when Lead Plaintiffs have a "strong interest in establishing liability under federal securities law, and . . . seek similar damages for similar injuries", the adequacy requirement can be met. <u>In re Tyson Foods</u>

Secs. Litig., 2003 U.S. Dist. LEXIS 17904, 17-18 (D. Del. 2003).

Here, MPERS contends that they have the same interest in proving Defendants' liability and maximizing its damages as does each proposed member of the Class. Moreover, MPERS has evidenced its adequacy and intent to protect the interest of the proposed Class by stepping in to fill the void created by the withdrawal of Miles Senn, former lead Plaintiff. Thus, the actions and interests of MPERS satisfy the adequacy requirements of Rule 23(a)(4).

### B.  Rule 23(b) Requirements

#### i.  Predominance of Common Questions of Law and Fact

Certification pursuant to 23(b)(3) requires a finding by the Court that common questions of law or fact predominate over individual issues. See Prudential I, 962 F. Supp. at 510-11. "To evaluate predominance, the Court must determine whether the efficiencies gained by class resolution of the common issues are outweighed by individual issues presented for adjudication." Id. at 511. However, "[t]he mere existence of individual issues will not of itself defeat class certification." In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 186 (D.N.J. 2003). See also Prudential II, 148 F.3d at 315; Sun Chem., 210 F.R.D. at 141. Rather, Courts have readily held that even a few common issues can satisfy this requirement where their resolution will significantly advance the litigation. Prudential I, 962 F. Supp. at 511. (gathering authority). Similarly, "[i]n cases where it is alleged that the defendant . . . engaged in a common course of conduct, courts have found that conduct to satisfy the commonality and predominance requirements." Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 231 (D.N.J. 2005). Additionally, the need to calculate "damages on an individual basis should not preclude

class [certification] when the common issues which determine liability predominate." Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 137 (3d Cir. 2000) (emphasis in original); see also Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1997). Nonetheless, federal courts have noted that "predominance is a test readily met in certain cases alleging consumer or securities fraud. Fogarazzo v. Lehman Bros., 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Plaintiff has brought this cause of action under the "fraud-on-the-market theory". The fraud-on-the-market theory must prove subjective reliance in open market transactions "since the market is interposed between the buyer and the seller." Moskowitz v. Lopp, 128 F.R.D. 624, 630 (E.D. Pa. 1989). As adopted by the Supreme Court in Basic, Inc. v. Levinson, 485 U.S. 224 (1988), the "fraud-on-the-market theory" creates the presumption that:

> An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. In an open and developed securities marker, the price of a company's stock is determined by the available material information regarding the company and the business. . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.

Thus, courts may presume class-wide damage on the basis of "fraud-on-the-market," under which the fraudulent conduct itself causes injury regardless of the nature of individual transactions. Lester v. Percudani, 217 F.R.D. 345, 352 (M.D. Pa. 2003).

Here, MPERS alleges, among other things, that Defendants made false and misleading statements regarding the Company's potential liability for a fraudulent transfer, thereby causing the stock to trade at an artificially inflated price. This case is based on the application of the "fraud-on-the-market" theory, which Plaintiffs rely upon here to establish the element of reliance, and which Plaintiffs argue results in the predominance of common issues and permits class

12

action treatment. Defendants argue that MPERS has failed to meet its burden of demonstrating that common issues of reliance predominate because Plaintiffs have not submitted evidence demonstrating loss of causation.

Plaintiffs have demonstrated that the cause of the decline in price is "due to the revelation of the truth and not the release of the unrelated negative information." Greenberg v. Crossroads Sys., Inc., 364 F.3d 657, 665 (5th Cir. 2004). Plaintiffs have put forth arguments regarding loss causation, despite Defendants arguments contending otherwise. Plaintiffs demonstrated that common issues of reliance predominate when arguing that KPMG's report and Defendants' scheme impacted and affected the price of Sealed Air stock. Plaintiffs contend that after the market learned of the Company's vulnerability to fraudulent transfer claims as a result of the July 29, 2002 court ruling in Defendants' bankruptcy case, the Company's stock dropped more than 61%. Thus, Plaintiffs allege that this would demonstrate that the cause of the price decline was due to the revelation of the company's vulnerability.

Defendants rely on Fifth Circuit cases which are not binding on this Court. The Fifth Circuit has recognized that "Basic allows each of the circuits room . . . to develop its own fraud-on-the-market rules." Luskin v. Intervoice-Brite Inc., 2008 U.S. App. LEXIS 286, *10 (5th Cir. 2008). The Third Circuit has not taken such measures to "tighten the requirements for plaintiffs seeking a presumption of reliance" similar to the Fifth Circuit. Id. Based on the foregoing, this Court finds that common questions of law and fact regarding Defendants' potential liability predominate over any individual issues and, therefore Rule 23(b)(3)'s predominance requirement is satisfied.

### ii.     Prosecution of a Class Action is Superior to Other Available Methods for Fair and Efficient Adjudication of the Controversy

In addition to predominance, Rule 23(b)(3) also requires that a "class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). In evaluating whether the superiority requirement is satisfied, the Court looks to four non-exclusive factors:

> (1) the interest of individual members of the class in individually controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action.

See FED. R. CIV. P. 23(b)(3).

The first step in the analysis will be to determine the "the interest of individual members of the class in individually controlling the prosecution of the action". Plaintiffs contend that this factor is minimal, asserting that the costs and expenses of such individual actions, when weighed against the individual recoveries obtainable, would be prohibitive. Second, Plaintiffs state that there is no record of any other actions now proceeding on behalf of similarly situated investors on an individual basis. Third, Plaintiffs assert that it would promote economy and efficiency of decisions to concentrate the litigation in this forum, where Defendants and many of the documents relevant to the allegations in the Complaint are located. Fourth, Plaintiffs argue that there is no reason to expect any difficulties in the management of this action as a class action because the actions of this size and complexity are common. Further, Plaintiffs assert that granting class certification will secure the rights of those investors whose rights cannot be redressed because it would not be economically feasible to retain individual counsel or otherwise pursue their individual actions. Plaintiffs reason that allowing certification will facilitate the

vindication of the statutory objective of a fair, orderly, trustworthy, and reliable securities market, and thus is superior to any alternative.

Plaintiffs have satisfied the superiority requirement of Rule 23(b)(3).  All four factors regarding the superiority of the prosecution of a class action as compared to other available methods for fair and efficient adjudication of the controversy have been met.  Plaintiffs are deemed to have the interest of the Class Members controlling the prosecution.  Additionally, allowing certification would lead to an effective ruling due to the size of the proposed Member Class.   Based on the foregoing, this Court finds that the superiority requirements have been satisfied.

Defendants argue that MPERS and the Class lack standing.  In the context of a securities fraud claim under Section 10(b), in order to establish a legally cognizable injury, "a plaintiff must plead and prove that his stock losses were proximately caused by the defendant's alleged misrepresentations."  15 U.S.C. § 78u-4(b)(4).

The Court finds that Plaintiffs have standing because Plaintiffs have evidenced misrepresentations by Sealed Air in the Complaint.  Plaintiffs contend that KPMG's report quantifying Sealed Air's projected claims were incorrect.  Plaintiffs argue that Sealed Air knew KPMG's conclusions were false because they failed to take into account other liabilities from Grace's prior businesses.  Additionally, Plaintiffs assert that Sealed Air falsely denied it would be held liable for a fraudulent transfer stemming from the 1998 transaction.  These allegations evidence Plaintiffs' standing.  Further, these allegations demonstrate that Plaintiffs' injuries were not only caused by a publication of Judge Wolin's Order regarding the legal standard, but rather a revelation of the fraud inconsistent with Sealed Air's published statements.

**IV.     CONCLUSION**

For the reasons stated, it is the finding of this Court that Plaintiffs' motion for class certification is **granted**.  An appropriate Order accompanies this Opinion.


                                                                    S/ Dennis M. Cavanaugh
                                                                    Dennis M. Cavanaugh, U.S.D.J.

Date:           March   12   , 2008
Orig.:          Clerk
cc:             All Counsel of Record
                Hon. Mark Falk, U.S.M.J.
                File