NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, | : : : | |
| Individually And On Behalf of All Others Similarly Situated, | : : : : | |
| Plaintiffs, | : : | **Hon. Dennis M. Cavanaugh** |
| v. | : : | **OPINION** |
| SEALED AIR CORPORATION and T.J. DERMOT DUNPHY,, | : : : | Civil Action No. 03-CV-4372 (DMC) |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

The matter comes before the Court upon request by Class Plaintiff Louisiana Municipal

Police Employee's Retirement System ("Plaintiff"),[1] pursuant to Fed. R. Civ P. 23(e), for Final

Approval of the Settlement Agreement with Defendants Sealed Air Corporation and T.J. Dermot

Dunphy ("Defendants"). Plaintiff asks this Court to (1) approve the Stipulation of Settlement of

July 27, 2009 as fair, reasonable, adequate, and in the best interest of the Class; (2) approve the

Plan of Allocation of the net settlement proceeds, and (3) grant Class Counsel's application for

---

[1] Former Lead Plaintiff Miles Senn withdrew from this action, and the Court substituted Louisiana Municipal Police Employee's Retirement System as Lead Plaintiff. Plaintiff is a pension fund with approximately $1.3 billion in net assets, and is the class representative.

an award of attorneys' fees and reimbursement of litigation expenses.[2]  The Court held a hearing

in the above matter on December 2, 2009 at 10:00 am.

      For the reasons set forth below, the Court will approve the Settlement Agreement, the Plan

of Allocation, and Class Counsel's application for attorneys' fees and expenses.

## I.  BACKGROUND

      This action concerns alleged misrepresentations made by Defendants as to the potential

liability facing Sealed Air as a result of a 1998 transaction whereby: (a) the corporation formerly

known as W.R. Grace & Co. spun off its specialty chemicals and container businesses; (b) the

corporation formerly known as W.R. Grace acquired Sealed Air Corporation and changed its name

to Sealed Air Corporation; and (c) the spun off specialty chemicals and container businesses were

renamed "W.R. Grace & Co."  Before 1998, Grace faced growing asbestos liability problems.

      Specifically, Plaintiff asserts that Defendants:  misrepresented that the transaction effectively

shifted all asbestos liabilities away from the corporation into which they had merged;

misrepresented the liabilities associated with the potentially fraudulent transaction; failed to properly

reserve for the contingent liabilities arising from the transaction in their reported financial

statements.

      This action was commenced by the filing of an initial complaint on September 15, 2003; the

Amended Complaint was filed thereafter on December 1, 2004.  On March 14, 2005, Defendants

---

[2] Pomerantz Haudek Grossman & Gross LLP ("Pomerantz Haudek") and Glancy Binkow & Goldberg LLP ("Glancy Binkow") are lead counsel for Plaintiff and Court-appointed Class Representative (i.e., Class Plaintiff) in this action.  Pomerantz Haudek, Glancy Binkow, along with Plaintiff's local counsel Squitieri & Fearon LLP ("Squitieri") are referred to collectively herein as "Class Counsel."

filed a motion to dismiss the Amended Complaint.  On December 14, 2005, the Court issued an order granting in part, and denying in part, Defendants' motion to dismiss. The Court sustained the Amended Complaint's allegations as against Sealed Air and Dunphy, while dismissing the Amended Complaint's allegations as to the following defendants:  William Hickey, Daniel Van Riper, David Kelsey and Jeffrey S. Warren.[3]

On March 12, 2008, after full briefing by the parties, the Court granted Plaintiff's motion for class certification and certified the action as a class action on behalf of all persons who purchased Sealed Air securities during the period from March 27, 2000 through July 30, 2002, both dates inclusive, excluding Defendants and various related and affiliated persons and entities. The Court appointed Plaintiff as Class Representative.  Subsequently, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, Defendants petitioned to the Third Circuit Court of Appeals for leave to appeal the Court's March 12, 2008 Order and Opinion certifying the action as a class action. Defendants' Rule 23(f) petition was denied by the Third Circuit on May 14, 2008.  On June 18, 2008, Plaintiff filed a motion seeking a court order barring defendants from introducing evidence concerning any advice defendants received from their attorneys.[4]  On August 11, 2008, the Court granted Plaintiff's motion.

Subsequently, the parties agreed to engage in a mediation before Judge Nicholas Politan, a retired federal judge.  At an October 29, 2008 mediation, the parties were unable to reach a settlement.  The parties, however, agreed to engage in a second mediation on March 23, 2009 before

---

[3] The Court denied two Motions for Reconsideration of its December 14, 2005 partial grant of Defendants' motion to dismiss.

[4] This motion was fashioned as a motion for partial summary judgment.

Professor Eric D. Green.  As a result of that mediation and ongoing negotiations by the parties guided by Professor Green, on April 27, 2009 the parties reached an agreement in principle to settle the action for the sum of $20 million in cash.

On August, 25 2009, the Court issued the Preliminary Approval Order granting Plaintiff's unopposed motion requesting that the Court: (1) grant preliminary approval of the proposed settlement, (2) direct the dissemination of notice to the potential class members, and (3) set the hearing date for final approval of the settlement.  The Court scheduled the fairness hearing for December 2, 2009.

Pursuant to the Preliminary Approval Order, Class Counsel instructed Berdon, the Claims Administrator for the Settlement, to begin disseminating copies of the notice in early September. The notice contains a thorough description of the proposed Class and Class Period, the Settlement, the Plan of Allocation,[5] and Class members' rights to participate in and object to the settlement, or exclude themselves from the Class. The notice also explained that counsel would seek attorneys' fees

---

[5] Pursuant to the Preliminary Approval Orders, and as set forth in the notice, all Class members who intend to participate in the distribution of the Settlement Fund must submit a valid Claim Form and all required information postmarked no later than January 16, 2010.  As provided in the notice, after deducting all appropriate taxes, administrative costs, attorneys' fees, and reimbursement of expenses, the balance of the Settlement Fund (the "Net Settlement Fund") will be distributed according to the Plan of Allocation.  The plan treats all Class Members in a similar manner:  to the extent that there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's Aggregate Net Recognized Loss (or "Claim").  If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total Claim of each Authorized Claimant, then each Authorized Claimant shall be paid its *pro rata* share of the Net Settlement Fund, based on the percentage each Authorized Claimant's Claim bears to the total aggregated value of the Claims. The Claims Administrator for the Settlement, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Loss."  Calculation of the Recognized Loss will depend upon when the stock was purchased or acquired, and whether the stock was held at the conclusion of the Class Period and thereafter, or sold during the Class Period or shortly thereafter, and if so, when it was sold.

of plus reimbursement of litigation expenses.  Berdon has mailed over 80,000 notices to potential Class members, and the notice has been made available the Berdon's website.[6]  Additionally, a summary notice was published in GLOBE NEWSWIRE on September 22, 2009.

Regarding attorneys' fees, Class Counsel seeks 30% of the Settlement Fund as fees (approximately $0.16 of claimants' recovery per share),  plus $393,350.46 as reimbursement for the expenses and costs actually incurred (approximately $0.01 on a "per share" basis) in prosecuting this litigation.

Plaintiff ask the Court to approve the Settlement Agreement, the Plan of Allocation, and Class Counsel's application for attorneys' fees and expenses.

## II. <u>STANDARD OF REVIEW</u>

### A. SETTLEMENT PLAN AND ALLOCATION

Federal Rule of Civil Procedure 23(e), provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." Fed. R. Civ. P. 23(e).  In determining whether to approve a class action settlement pursuant to Rule 23(e), "'the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members'" <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.</u>, 55 F.3d 768, 785 (3d Cir.1995) (quoting <u>Grunin v. Int'l House of Pancakes</u>, 513 F.2d 114, 123 (8th Cir.), <u>cert</u>. <u>denied</u>,423 U.S. 864 (1975) (citation omitted)).

---

[6] To distribute the notice to all reasonably identifiable potential Class members in accordance with the Preliminary Approval Order, Berdon identified Sealed Air shareholders whose names and addresses were contained in the records provided to Berdon by the transfer agent, BNY Mellon, and identified brokers, banks and other nominees.

Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is "fair, adequate, and reasonable."  Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir. 1999); Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 965 (3d Cir.1983).  In Girsh v. Jepson, the Third Circuit identified nine factors, so-called "Girsh factors," that a district court should consider when making this determination:

(1)    the complexity, expense and likely duration of the litigation;
(2)    the reaction of the class to the settlement;
(3)    the stage of the proceedings and the amount of discovery completed;
(4)    the risks of establishing liability;
(5)    the risks of establishing damages;
(6)    the risks of maintaining the class action through the trial;
(7)    the ability of the defendants to withstand a greater judgment;
(8)    the range of reasonableness of the settlement fund in light of the best possible recovery;
(9)    the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir.1975).  "These factors are a guide and the absence of one or more does not automatically render the settlement unfair."  In re American Family Enterprises, 256 B.R. 377, 418 (D.N.J. 2000).  Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under Girsh.  See In re Orthopedic Bone Screw Prod. Liab. Litig., 176 F.R.D. 158, 184 (E.D.Pa.1997); see also In re AT&T Corp. Sec. Litig., 455 F.3d 160 (3d Cir. 2006).[7]  In sum, the Court's assessment of whether the settlement is fair,

---

[7]    District courts should also consider other relevant and appropriate factors.  The court in Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions), suggested that district courts may consider "the maturity of the underlying substantive issues . . . the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages . . . whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable."  148

adequate and reasonable is guided by the <u>Girsh</u> factors, but the Court is in no way limited to considering only those enumerated factors and is free to consider other relevant circumstances and facts involved in this settlement.

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." <u>Karcich v. Stuart</u> (<u>In re Ikon Office Solutions, Inc., Sec. Litig.</u>), 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations and internal quotations omitted); <u>see also</u> <u>Walsh v. Great Atlantic & Pacific Tea Co.</u>, 726 F.2d 956, 964 (3d Cir. 1983) ("The Court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.").

**B. J**UDICIAL **A**PPROVAL OF **A**TTORNEYS' **F**EES

The awarding of fees is within the discretion of the court, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of facts that are not clearly erroneous. <u>In re Cendant Corp. PRIDES Litig.</u>, 243 F.3d 722, 727 (3d Cir. 2001). Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons which support its conclusion. <u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 301 (3d Cir. Pa. 2005). The Third Circuit identified several factors–the <u>Gunter</u> factor–that a district court should consider. These factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and

---

F.3d 283, 323 (3d Cir. N.J. 1998).

(7) the awards in similar cases.

Rite Aid, 396 F.3d at 301 (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)). The Court need not apply these fee award factors in a formulaic way. Certain factors may be afforded more weight than others. Rite Aid, 396 F.3d at 301. The Third Circuit emphasized in Rite Aid, however, that the district court must engage in a robust assessment of these factors. 396 F.3d at 302; see also Gunter, 223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a cursory and conclusory" fashion).

### III. DISCUSSION

A. SETTLEMENT PLAN AND ALLOCATION - APPLICATION OF THE GIRSH FACTORS

The Court will consider the proposed settlement in light of the Girsh factors. The balance of factors, here, weighs in favor of approval.

1.      Complexity, Expense and Likely Duration of Litigation

This factor is concerned with assessing the "probable costs, in both time and money, of continued litigation." In re Cendant Corp. Litig., 264 F.3d 201, 234 (3d Cir. 2001).

This case is a complex securities action that would be expensive to litigate. At this stage, motions, trial, and post-trial motions and appeal remain. See Meijer, Inc. v. 3M, 2006 U.S. Dist. LEXIS 56744, at *13 (E.D. Pa. Aug. 14, 2006). This case will involve substantial attorney and expert time, and will require extensive testimony and documentary evidence. This action also entails review of bankruptcy claims and related asbestos litigation.

Additionally, there will necessarily be significant delay in recovery if this case is tried. See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 536 (3d Cir. 2004); Weiss v. Mercedes-

Benz of N. Am., Inc., 899 F. Supp. 1297, 1301 (D.N.J. 1995).  In contrast, the settlement would

provide immediate recovery of $20 million, less attorneys' fees and expenses.  The first Girsh factor

weighs in favor of approving the settlement.

> 2.     Reaction of Class to Settlement

This factor requires the Court to evaluate whether the number of objectors, in proportion to

the total class, indicates that the reaction of the class to the settlement is favorable.

Here, on July 27, 2009, this Court issued a Preliminary Approval Order setting November

18, 2009 as the final date for filing objections to, or requests for exclusion from, the Settlement.  The

notice was sent to over 82,000 potential Class members.  No class member objected to the fairness,

adequacy or reasonableness of the Settlement (or to the application for attorneys' fees). Two

members did, however, opt out of the settlement.  This low number supports a finding that the

Settlement terms are reasonable.  Warfarin, 391 F.3d at 536; Stoetzner v. U.S. Steel Corp., 897 F.2d

115, 118-19 (3d Cir. 1990) (objections by 29 of 281 class members "strongly favors settlement");

O'Keefe v. Mercedes-Benz, 214 F.R.D. 266, 295 (E.D. Pa. 2003) (holding that where only .02% of

the Class opted out, "such implicit support of the settlement weighs heavily in favor of settlement.").

The low number of opt-outs, here, is especially compelling because the opt-outs were not

premised upon substantive concerns with the settlement or fee amount.  Instead, the  two recorded

opt-outs simply responded to the settlement notice by saying that they did not own the subject stock

during the relevant period.  This fact further supports the reasonableness of the settlement.  See

Desantis v. Snap-On Tools Co., LLC, 2006 U.S. Dist. LEXIS 78362 (D.N.J. Oct. 27, 2006) (not for

publication) (considering the reasoning behind objections or opts-outs in assessing the reaction of

the class to settlement).

The Court also notes that the second Girsh factor is especially critical to our fairness analysis, as the reaction of the class "is perhaps the most significant factor to be weighed in considering its adequacy." Sala v. National R.R. Passenger Corp., 721 F. Supp. 80, 83 (E.D. Pa. 1989); Fanning v. AcroMed Corp. (In re Orthopedic Bone Screw Prods. Liab. Litig.), 176 F.R.D. 158, 185 (E.D. Pa. 1997) (stating that a "relatively low objection rate militates strongly in favor of approval of the settlement" (internal citations omitted)).  This Court is persuaded that the complete lack of objections, and merely two opt-outs, weighs heavily in favor of approving the Settlement.

3.     Stage of Proceedings and Amount of Discovery Completed

Pursuant to the third Girsh factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken. GMC Pick-Up Truck, 55 F.3d at 813; see also Prudential, 148 F.3d at 319.  In short, under this factor the Court considers whether the of amount discovery completed in the case has permitted "counsel [to have] an adequate appreciation of the merits of the case before negotiating." Prudential, 148 F.3d at 319; eee also AT&T, 455 F.3d at 167 (noting extent of discovery).

In this case, the evidence shows that Class Counsel were well-apprised of the merits of the case before and during negotiation.  Class Counsel conducted a thorough investigation, including a review of:  Sealed Air's public filings, annual reports, press releases, public statements. Additionally, counsel extensively reviewed related court filings, including voluminous court filings in the W.R. Grace & Co. bankruptcy and a related proceeding against Sealed Air.  Finally, counsel conducted legal research regarding the claims asserted and potential defenses thereto.  Class Counsel engaged in pre-filing investigative work starting in May 2003, and this case has been developed over

-10-

the course of 6 years. These discovery efforts entailed analyzing over 48,000 documents produced by Defendants and third parties. Depositions were taken of Sealed Air and W.R. Grace executives, experts and research analysts.

Based on the foregoing, the third <u>Girsh</u> factor weighs in favor of approving the Settlement Agreement.

4.    <u>Risks of Establishing Liability</u>

A trial on the merits always entails considerable risk. <u>Weiss</u>, 899 F. Supp. at 1301. In this case, the risks of litigation are great because Plaintiff's claims involve complex and contested questions of law. In particular, Plaintiff would face obstacles to proving the falsity of the alleged misstatements and in establishing the scienter of Defendants. Plaintiff would have to expend time and money to make these showings, without any guarantee of success.

Defendants' submissions have made it clear to this Court that they intend to contest the issue of liability. Previously, Defendants secured dismissal of several initially-named Defendants. There is every reason to believe Defendants will continue to vigorously oppose this action.

For these reasons, Plaintiffs face many obstacles in attaining a successful result at trial and this <u>Girsh</u> factor weighs in favor of approving the Settlement Agreement.

5.    <u>Risks of Establishing Damages</u>

The fifth <u>Girsh</u> factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." <u>GMC</u>, 55 F.3d at 816. In the securities class action context, once plaintiffs establish that defendants made material misstatements with scienter, plaintiffs must also prove both "transaction causation" under the fraud-on-the-market theory as well as loss causation (i.e., that "there is depreciation in share value as a result of the true facts becoming generally

known").

Plaintiff would present complex expert testimony about what the "true value" of Sealed Air shares would have been during the Class Period (had there been no fraud), the amount of price inflation occasioned by the fraud, and the amount of inflation removed by disclosure of the true facts. Plaintiff's consulting expert concluded that the Class's estimated recoverable damages were approximately $208 million. Defendant would present its own expert to contest Plaintiff's damages calculations, and "[a] jury would therefore be faced with competing expert opinions representing very different damage estimates . . . adding further uncertainty." In re Rent-Way Sec. Litig., 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003). Even if Plaintiffs successfully established causation at trial, post-trial motions and appeals present added risk. In re Apollo Group, Inc. Sec. Litig., 2008 U.S. Dist. LEXIS 61995, at *1-4 (D. Ariz. Aug. 4, 2008) (granting Rule 50(b) motion, following lengthy trial, notwithstanding the $280 million jury verdict).

The complexity associated with predicting the risk factors (Girsh factors 4 and 5) weighs in favor of approving the Settlement.

### 6.   Ability of Defendants to Maintain Class Certification Through Trial

This Court approved certification of the class on March 12, 2008. Defendants petitioned the Third Circuit Court of Appeals for leave to appeal the Court's certification of the action as a class action. This petition was denied.

Pursuant to Federal Rule of Civil Procedure Rule 23, however, a court may decertify a class during litigation if it proves to be unmanageable. The Court must consider whether there is a risk that the class could not be maintained during trial. Although there may be inherent risks in maintaining a class throughout trial, there is no reason to think that decertification is likely here.

-12-

The sixth factor, therefore, does not weigh in favor of approving the Settlement Agreement.

       7.       <u>Ability of Defendants to Withstand a Greater Judgment</u>

To evaluate whether the Settlement Agreement is fair to Plaintiffs, the Court must evaluate whether Defendants could withstand a judgment much greater than the amount of the settlement. <u>See</u> <u>Cendant</u>, 264 F.3d at 240; <u>Prudential</u>, 148 F.3d at 321-22; <u>GMC</u>, 55 F.3d at 818.   While Defendants here may be able to withstand a greater judgment, this factor is not dispositive. <u>See</u> <u>GMC</u>, 55 F.3d at 818.  Moreover, Plaintiffs note that Defendants ability to withstand a larger judgment may be less certain in the current economic environment.

However, as noted above, approval of a settlement may still be appropriate even if all the factors do not weigh in favor of approval.

       8.       <u>Reasonableness of the Settlement Fund in Light of the Best Possible Recovery, and in Light of the Attendant Risks of Litigation (Factors 8 & 9)</u>

To assess the reasonableness of the Settlement Agreement under <u>Girsh</u> factors 8 and 9, this Court must compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing with the amount of the proposed settlement." <u>Meijer</u>, 2006 U.S. Dist. LEXIS 56744, at *16 (citing <u>GMC</u>, 55 F.3d at 806, internal quotations omitted).

Based on their discovery, investigation and evaluation of the facts and law relating to all matters alleged in the pleadings, Plaintiffs and Defendants will be provided $20 million in cash, less any attorneys' fees and expenses the Court may approve.  If the Court were to rely solely on Plaintiff's damages calculation, estimated recoverable damages were approximately $208 million. Accordingly, this settlement represents slightly below 10% of the total realizable value of the action.

This value is well over the average settlement amounts in securities fraud class actions where investors sustained losses–over the past decade settlement amounts have ranged from 3% to 7% of the class members' estimated losses.[8]

Due to the complex nature of this litigation, the parties would have faced great risk and uncertainty should the suit have proceeded to trial, with no guarantee of recovery.  Weighing the risks of recovery against the satisfactory results Class Members receive with settlement, this factor weighs in favor of approving the Settlement Agreement.

In sum, 7 of the 9 Girsh factors weight in favor of approval of the settlement and plan of allocation.  The Court, therefore, finds that the Settlement is fair, adequate and reasonable, and is in the best interests of the Class.  Accordingly, the Court approves the Settlement.

## B. ATTORNEYS' FEES - THE GUNTER FACTORS

Consideration of the Gunter factors weighs in favor of the reasonableness of the attorneys' fees.  Class Counsel seeks 30% of the Settlement Fund as fees,  plus $393,350.46 as reimbursement for the expenses and costs actually incurred.

First, courts consider the size of the fund created and the number of persons benefitted by the settlement.  The Settlement value is large ($20,000,000) and the number of class members is large.  The value of the settlement, when compared to potential award at trial, is higher than the average

---

[8]  See Plaintiffs Brief in Support of Final Approval of the Settlement and Plan Allocation; see, e.g., In re Rite Aid Corp. Sec. Litig., 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing a 1999 study showing that securities class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses"); STEPHANIE PLANCICH ET AL., "2008 Trends: Subprime and Auction-Rate Cases Continue to Drive Filings, and Large Settlements Keep Averages High," at pp. 22-23, available at www.nera.com (July 2008) (noting that "the median annual ratio of settlement size to investor losses has fallen from 7.1% in 1996 to the 2.2% to 3.2% range since 2002").

award ratio in similar cases.  <u>See</u> Section, III.A.8, <u>supra</u>.

Second, there have been no substantial objections by members of the class to the settlement terms and/or fees requested by counsel–although 2 members opted out of the Settlement.  This lack of objections supports the reasonableness of the proposed attorneys' fees.  The Court also notes that Class Counsel's requested fee amount is less than the 33 - 1/3 percent requested in the notice to class members.

Third, the skill and efficiency of the attorneys involved is high.  Class Counsel are highly skilled attorneys with substantial experience in class action litigation, particularly securities litigation, as illustrated by the Declarations of Counsel accompanying their fee application.

Fourth, as set forth in Section III.A.1, <u>supra</u>, securities class actions are inherently complex. Moreover, this action required review of bankruptcy claims and related asbestos litigation, this action has been ongoing for over six years.

Fifth, as set forth in Sections III.A.(4)-(5), <u>supra</u>, the risk of nonpayment was great.  Plaintiff would face obstacles to proving the falsity of the alleged misstatements and in establishing the scienter of Defendants, as well as establishing causation.  Moreover, in preparing this case, counsel incurred $393,350.46 in out-of-pocket expenses.

Sixth, the amount of time devoted to the case by plaintiff's counsel has been substantial.  As previously noted, this case was initiated over six years ago.  The total number of hours expended by attorneys and paralegals employed by Class Counsel is 18,901.55 hours.  This time consists of review of 48,000 documents produced by Defendants and third parties.  Counsel has also conducted depositions of Sealed Air and W.R. Grace executives, experts and research analysts.

Seventh, and finally, the awards in similar cases are comparable to the award here.  The

requested fee award in this matter is 30%. This award is similar to settlements in other cases in this circuit. "Courts within the Third Circuit often award fees of 25% to 33 1/3% of the recovery." In re Remeron Direct Purchaser Antitrust Litig., No. 03-0085, 2005 U.S. Dist. LEXIS 27013, at *44 (D.N.J. Nov. 9, 2005) (not for publication) (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71% with a median value that turns out to be one-third") (internal citations omitted); General Motors, 55 F.3d at 822 (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"). Moreover, the requested fee is consistent with a privately negotiated contingent fee in the marketplace. See In re Datatec Sys. Sec. Litig., 2007 U.S. Dist. LEXIS 87428, at *22 (approving settlement of 30% of the settlement fund for attorneys' fees; noting that the fees were "within the range of privately negotiated contingent fees") (D.N.J. Nov. 28, 2007) (not for publication); Remeron, 2005 U.S. Dist. LEXIS 27013, at*46 ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); Karcich, 194 F.R.D. at 194 ("[I]n private contingency fee cases . . . plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"). The final Gunter factor indicates that Class Counsel's fee request is reasonable.

In addition to assessing the Gunter factors, Courts in the Third Circuit confirm the reasonableness of a fee by using the lodestar calculation method when a fee award is based on percentage of recovery. See Rite Aid, 396 F.3d at 305-306.[9] The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and

---

[9] Milliron v. T-Mobile USA, Inc., 2009 U.S. Dist. LEXIS 101201, at *43-44 (D.N.J. Sept. 10, 2009) (not for publication) (noting that, under these circumstances, "this is only a cross-check and a not a full lodestar analysis.").

the experience of the attorneys." <u>Id.</u>

In support of the lodestar calculation, Class Counsel provided charts detailing the hours worked and billing rates for each attorney and paralegal who worked on this matter. Class Counsel have expended a total of 18,901.55 hours in the prosecution of this litigation. Specifically, Pomerantz Haudek recorded 10,116.20 attorney-hours at rates ranging from $225 to $830. The non-weighted average attorney rate billing rate was $596.25, although the weighted average rate is significantly less (as attorneys billing lower rates logged more hours). Glancy Binkow dedicated a total of 8,502.10 attorney-hours at rates varying from $350 to $725. The non-weighted average attorney billing rate was $528.33, although, again, the weighted average would be significantly less, as approximately half of the billing time was recorded by attorneys at the $350 and $425 rate. Squitieri billed 167.50 attorney-hours at a non-weighted average rate of $625.00. The total resulting lodestar value is $9,206,810.75.[10]

Based upon the hours and applicable billing rates provided by the parties, the lodestar cross-check confirms the reasonableness of the percentage award. An award of 30% of the Settlement Fund equals $6,000,000–a figure resulting in a lodestar ratio of -.35%. That is, the award requested equals around 65% of the lodestar calculation. In many cases, percentage-of-fund awards are significantly greater that the lodestar value (i.e., result in positive multipliers), and courts nonetheless find the fee awards to be reasonable. <u>See, e.g.</u>, <u>In re AT&T Corp.</u>, 455 F.3d at 173 ("[W]e think a multiplier of 1.28 is well within a reasonable range"); <u>Prudential</u>, 148 F.3d at 341 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method

---

[10] This exact figure was provided by Class Counsel. <u>See</u> <u>Rite Aid</u>, 396 F.3d at 306-307 (noting that district courts may rely on billing summaries submitted by the parties when conducting a lodestar cross-check); <u>Prudential</u>, 148 F.3d at 342 (same).

is applied") (citations omitted).  Here, not only is the lodestar multiplier low, it is negative.  The lodestar cross-check, accordingly, supports the Court's reasonableness analysis.

Based on the <u>Gunter</u> Factors, and confirmed by a lodestar analysis, Class Counsel's fee request is fair, adequate and reasonable.

### C. ADDITIONAL COSTS

The Court also finds that Class Counsel is entitled to receive costs, as they have been "adequately documented and reasonably and appropriately incurred in the prosecution of the case." <u>See</u> <u>In re Cendant Corp.</u>, 232 F. Supp. 2d at 343 (quoting <u>In re Safety Components Int'l, Inc.</u>, 166 F. Supp. 2d 72, 104 (D.N.J. 2001)).  Class Counsel has provided itemized expenditures, and has certified that full documentation of the costs have been maintained in the firms' records.  Additionally, the request for costs is $393,350.46, which is less than the $500,000 which was presented in the notice to potential class members.

Lastly, Class Counsel requests $25,000 as compensation for costs to be paid to Class Plaintiff.  <u>See, e.g.</u>, <u>Cullen v. Whitman Med. Corp.</u>, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quoting <u>In re S. Ohio Corr. Facility</u>, 175 F.R.D. 270, 272 (S.D. Ohio 1997)) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation.").  Class Plaintiff has played a large role in prosecuting this litigation.  Class Plaintiff's General Counsel was deposed on two separate occasions, and conducted extensive preparation for the deposition of four of its investment managers.  Class Plaintiff was required to review discovery documents, consult with Class Counsel and travel while participating in this case.

As noted above, no objections have been filed in response to the proposed award of costs to

-18-

Class Counsel or Class Plaintiff.  For the reasons stated, the Court finds that the proposed reimbursement of $393,350.46 in costs to Class Counsel, and compensation of $25,000 to Class Plaintiff is fair, adequate and reasonable.

## IV.  CONCLUSION

For the reasons set forth above, final approval of the Settlement Agreement, the Plan of Allocation, and Class Counsel's application for attorneys' fees and expenses is proper.

/S/ Dennis  M.  Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          December   4  , 2009
Orig.:         Clerk's Office
cc:            All Counsel of Record
               The Honorable Mark Falk, U.S.M.J.
               File